## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PESSIN, on behalf of himself and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>JPMORGAN CHASE US BENEFITS EXECUTIVE, as Plan Administrator of the JPMorgan Chase Retirement Plan, BOARD OF DIRECTORS OF JPMORGAN CHASE BANK and J.P. MORGAN CHASE & COMPANY, JPMORGAN CHASE RETIREMENT PLAN,<br><br>        Defendants. | Civil Action No. 1:22-cv-2436<br><br>Hon. Vernon S. Broderick |

## CORRECTED MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Jeremy P. Blumenfeld
New York Bar No. 800811
jeremy.blumenfeld@morganlewis.com

Alexis Caris
*Pro Hac Vice forthcoming*
alexis.caris@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

Stephanie Reiss
*Pro Hac Vice forthcoming*
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
Tel: (412) 560-3300
Fax: (412) 560-7001
stephanie.reiss@morganlewis.com

Sari Alamuddin
*Pro Hac Vice forthcoming*
sari.alamuddin@morganlewis.com

Eric Mackie
*Pro Hac Vice forthcoming*
eric.mackie@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL  60606
Tel: (312) 324-1000
Fax: (312) 324-1001

*Attorneys for Defendants.*

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 3

        A.      The Plan and Plan Disclosures................................................................ 3

        B.      Plaintiff's Employment and Release Agreement .................................... 5

III.    ARGUMENT .................................................................................................... 7

        A.      Standard of Review................................................................................. 7

        B.      The Complaint Fails to State a Claim upon Which Relief Can Be Granted.......... 8

                1.      Plaintiff Fails to State a Claim in Count I Because the Summary
                        Plan Descriptions Disclose the Information Plaintiff Claims Was
                        Required and Also Because Count I Is Time-Barred................................ 9

                        a.      Count I Fails as a Matter of Law Because Defendants
                                Disclosed the Information Plaintiff Alleges Was Required.......... 9

                        b.      Plaintiff's Breach of Fiduciary Duty Claim is Time-Barred. ...... 11

                2.      Plaintiff Fails to State a Claim in Count II for Failure to
                        Adequately Monitor. ........................................................................ 13

                3.      Plaintiff Fails to State a Claim in Count III for Inaccurate Pension
                        Benefit Statements. ......................................................................... 14

                        a.      Plaintiff's Allegations About the Pension Benefit
                                Statements Do Not State a Violation of ERISA Section
                                105........................................................................................ 14

                        b.      Plaintiff's Claim That the Plan Administrator Issued
                                Inadequate Pension Benefit Statements Is Time-Barred. ........... 18

        C.      Plaintiff's Claims Are Subject to Dismissal Because Plaintiff Released
                Each Claim and Agreed Not to Sue or Participate in a Class Action
                (Counts I-III) .................................................................................... 20

IV.     CONCLUSION................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahearn v. Brachowicz*,
   No. 13-CV-8007 SAS, 2014 WL 3408389 (S.D.N.Y. July 10, 2014)......................................9

*Anderson v. Xerox Corp.*,
   614 F. App'x 38 (2d Cir. 2015) ......................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..............................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................7

*Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*,
   933 F.3d 257 (3d Cir. 2019)...........................................................................................15

*Brown v. Rawlings Fin. Servs., LLC*,
   868 F.3d 126 (2d Cir. 2017)......................................................................................15, 18

*Caputo v. Pfizer, Inc.*,
   267 F.3d 181 (2d Cir. 2001)...........................................................................................12

*Coulter v. Morgan Stanley & Co. Inc.*,
   753 F.3d 361 (2d Cir. 2014)...........................................................................................13

*Cunningham v. USI Ins. Servs., LLC*,
   No. 21-1819, 2022 WL 889164 (S.D.N.Y. Mar. 25, 2022)..................................................13

*Degrooth v. Gen. Dynamics Corp.*,
   837 F. Supp. 485 (D. Conn. 1993), *aff'd*, 28 F.3d 103 (2d Cir. 1994) .....................................8

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..............................................................................................8

*In re Express Scripts/Anthem ERISA Litig.*,
   285 F. Supp. 3d 655 (S.D.N.Y. 2018)................................................................................12

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)........................................................................................................8

*Finz v. Schlesinger*,
   957 F.2d 78 (2d Cir. 1992)..............................................................................................20

**TABLE OF AUTHORITIES**

**Page(s)**

*Harless v. Rsch. Inst. of Am.*,
  1 F. Supp. 2d 235 (S.D.N.Y. 1998) ...................................................................18

*Hawkes v. Wells Fargo & Co.*,
  No. 17-CV-00632-JSW, 2018 WL 11182067 (N.D. Cal. May 23, 2018) ..............17

*Healy v. Nw. Airlines, Inc./Delta Air Lines, Inc.*,
  No. 12–cv–733, 2012 WL 2993898 (E.D.N.Y. July 20, 2012) ............................10

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................................8

*Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*,
  285 F. App'x. 802 (2d Cir. 2008) .....................................................................19

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ..........................................................................21

*Hudson v. Nat'l Football League Mgmt. Council*,
  No. 18-04483, 2019 WL 5722220 (S.D.N.Y. Sept. 5, 2019), *R. & R. adopted
  as modified*, 2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019) ..............................8

*Janese v. Fay*,
  692 F.3d 221 (2d Cir. 2012)............................................................................12

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)............................................................................14

*Kirkendall v. Halliburton, Inc.*,
  707 F.3d 173 (2d Cir. 2013)..............................................................................9

*Kujanek v. Hous. Poly Bag I, Ltd.*,
  658 F.3d 483 (5th Cir. 2011) ..........................................................................15

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) .....................................................................12

*In re Lehman Bros. Sec. & ERISA Litig.*,
  113 F. Supp. 3d 745 (S.D.N.Y. 2015), *aff'd sub nom. Rinehart v. Lehman
  Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016) .............................................14

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007)........................................................................10, 11

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993)........................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

*Murphy v. Int'l Bus. Machs. Corp.*,
  No. 10-6055, 2012 WL 566091 (S.D.N.Y. Feb. 21, 2012)....................................................12

*NRW, Inc. v. Bindra*,
  No. 12-CV-8555 RJS, 2014 WL 4449779 (S.D.N.Y. Sept. 10, 2014) ....................................9

*Perry v. NYSARC, Inc.*,
  424 F. App'x 23 (2d Cir. 2011) .............................................................................................9

*Pirro v. Nat'l Grid*,
  590 F. App'x 19 (2d Cir. 2014) ............................................................................................12

*Ret. Sys. v. ANZ Sec., Inc.*,
  137 S. Ct. 2042 (2017)..........................................................................................................11

*Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*,
  515 F.3d 93 (2d Cir. 2008)....................................................................................................10

*Roman v. Spirit Airlines, Inc.*,
  482 F. Supp. 3d 1304 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL
  4317318 (11th Cir. Sept. 23, 2021).......................................................................................22

*Russell v. Harman Int'l Indus., Inc.*,
  945 F. Supp. 2d 68 (D.D.C. 2013), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014)........................20, 21

*Russello v. United States*,
  464 U.S. 16 (1983)................................................................................................................16

*Salvador v. Adirondack Park Agency of N.Y.*,
  35 F. App'x 7 (2d Cir. 2002) ..................................................................................................7

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)....................................................................................................8

*Stanley v. George Washington Univ.*,
  394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020)......................20

*Stuart v. Am. Cyanamid Co.*,
  158 F.3d 622 (2d Cir. 1998)..................................................................................................18

*In re SunTrust Banks, Inc. ERISA Litig.*,
  No. 08-03384, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) .................................................21

*Tritt v. Automatic Data Processing, Inc.*,
  2008 U.S. Dist. LEXIS 41208 (D. Conn. May 27, 2008).......................................................18

# TABLE OF AUTHORITIES

**Page(s)**

*U1it4Less, Inc. v. FedEx Corp.*,
   No. 11-1713, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) ...................................................22

*Valentino v. Cont'l Cas. Co.*,
   No. CIV. A. 99-1101, 2000 WL 33341979 (W.D. Pa. June 29, 2000)...................................19

*Vallone v. CNA Fin. Corp.*,
   375 F.3d 623 (7th Cir. 2004) ...............................................................................................11

*Williamson v. Travelport, LP*,
   953 F.3d 1278 (11th Cir. 2020) ...........................................................................................15

**Statutes**

ERISA Section 102, 29 U.S.C. § 1022 .............................................................................10, 11

ERISA Section 105, 29 U.S.C. § 1025 ................................................................................ *passim*

ERISA Section 204(g), 29 U.S.C. § 1054(g) ...........................................................................16

ERISA Section 404(a), 29 U.S.C. § 1104(a) .............................................................................9

ERISA Section 413, 29 U.S.C. § 1113 ...............................................................................11, 12

ERISA Section 502(c), 29 U.S.C. § 1132(c) ....................................................................... *passim*

ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ......................................................20, 21

ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3)................................................................20, 21

Pennsylvania Consolidated Statutes Title 42 Section 5524(5) ....................................................19

**Rules**

Fed. R. Civ. P. 12(b)(1).............................................................................................................20

Fed. R. Civ. P. 12(b)(6).........................................................................................................4, 7, 8

Fed. R. Civ. P. 12(d) ................................................................................................................20

N.Y. C.P.L.R. § 202 ................................................................................................................18

N.Y. C.P.L.R. § 215(4)........................................................................................................18, 19

I.      **INTRODUCTION**

Plaintiff brings three class-wide claims under ERISA, challenging disclosures related to a 1998 plan amendment converting a traditional defined benefit plan to a cash balance plan. For the reasons explained below, Plaintiff's claims fail as a matter of law, are time-barred, and are barred by the release and covenant not to sue that Plaintiff executed when his employment ended.

Under a 1998 amendment to the traditional benefit plan, existing participants like Plaintiff continued to accrue benefits under the traditional final average pay formula until December 31, 2003 when it was frozen. Compl. ¶ 19. At the same time, participants also received an "opening balance" and began to accrue benefits pursuant to the new cash balance account formula. Compl. ¶ 20. At benefit commencement, existing participants were entitled to receive the greater of either (1) their frozen benefit earned through December 31, 2003, under the traditional formula or (2) their cash balance account earned under the new formula from 1998 through their benefit commencement date. *Id*. ¶ 22.[1]

In Counts I and II of the Complaint, Plaintiff claims that Defendants breached their fiduciary duties because they did not tell him this information, i.e., they did not tell him that his traditional formula benefit would be frozen, or that when he commenced his benefits, he would receive the greater of his frozen traditional formula benefit as of December 31, 2003 or his cash balance benefit through his benefit commencement.[2]  But contrary to Plaintiff's allegations, the

---

[1] This "greater of" benefit formula is required by ERISA's anti-cutback rule. *Id.*

[2] By definition, every "greater of" benefit formula has the potential for one benefit (here, the frozen traditional formula benefit through 2003) to be higher than another (here, the cash balance account). In that circumstance, the lower benefit amount might grow over time but still remain lower than the other benefit. To use a very simple example, the benefit under one formula could be $5 and the benefit under the other formula could be $3. If the $3 benefit increases by $1 over time, it will have increased to $4, but the "winning" benefit will still be the $5. This concept is sometimes described as "wearaway."

Plan's Summary Plan Descriptions ("SPDs") (which this Court may consider on a motion to dismiss) starting in the years immediately after the amendment contain that very information.

These SPDs state: "After December 31, 2003, your accrued benefit under the prior formula *will be frozen* and will continue to act as a minimum benefit."  2000 SPD, Ex. A p. 13 (emphasis added); 1999 SPD, Ex. B p. 12.  And upon retirement, "[y]ou will receive the *larger* of the two benefits (*either* the accrued benefit under the prior formula or the Cash Balance Plan account balance)." Ex. A p. 13 (parentheticals in original, emphasis added); *see also* Ex. B p. 12.[3]  The SPDs not only disclosed what the Complaint alleges was required, but also summarized the actual terms of the Plan as alleged.  Compl. ¶ 22.  As such, Counts I and II fail as a matter of law. Moreover, because these statements were made in SPDs more than twenty years ago, Counts I and II are also time-barred.

In Count III, Plaintiff seeks penalties under 29 U.S.C. § 1132(c) on the basis that the pension benefit statements he received violated 29 U.S.C. § 1025(a)(1)(B), because they were allegedly inaccurate in failing to provide information about his frozen early retirement benefits under the traditional formula in 2019–2021.[4]  But 29 U.S.C. § 1025 does not require pension statements to include information on early retirement benefits, and even if the statements were inaccurate, which they were not, Plaintiff cannot obtain penalties for an inaccurate pension

---

[3] This is again restated in another section of these SPDs as follows: "all forms of payment will be compared with the applicable benefit under the Cash Balance Plan and the prior formula.  *The greater amount will be payable to you*." Ex. A p. 16 (emphasis added); Ex. B p. 15.

[4] Although Plaintiff never explicitly acknowledges that the information he is seeking is about his early retirement benefits, this is clear from all the other facts he alleges.  *See* Compl. ¶¶ 12, 15, 35, 43, 46.  Plaintiff was only 53-55 years old in 2019–2021.  Notably, the Complaint alleges no facts about Plaintiff's accrued benefit under the Plan – a term of art that refers to a cash balance account or an age-65 annuity.

statement in any event.  Like Counts I and II, Count III also is time-barred insofar as Plaintiff has failed to file his Complaint within one year of receiving the pension benefit statements in question.

Lastly, Plaintiff's claims are barred by the Release Agreement Plaintiff signed upon the separation of his employment in 2019.  In this Release Agreement, Plaintiff released his right to bring "any claims under . . . the Employee Retirement Income Security Act of 1974 ('ERISA') including, but not limited to, breach of fiduciary duty and equitable claims under 1132(a)(3)," the exact claims he brings here.    Plaintiff also covenanted not to sue over any released claims, and not to act as a class representative in *any* action against "the Company," a defined term in the Release Agreement that includes Defendants here.[5]  Accordingly, the Complaint should be dismissed in its entirety.

## II.    <u>BACKGROUND</u>

### A.    <u>The Plan and Plan Disclosures</u>

Plaintiff began working for the Morgan Guaranty Trust Company of New York ("Morgan") 1987 and became a participant in the Plan.  Compl. ¶¶ 12-13.  Until December 31, 1998, the Plan was a traditional defined benefit retirement plan that calculated participant benefits based on a final average pay formula.  Compl. ¶¶ 14, 16.  Although the Plan defined normal retirement age as age 65, the Plan also provided a subsidized early retirement benefit for certain eligible employees.  Compl. ¶¶ 14-15.

Effective December 31, 1998, the Plan was amended to convert it into a cash balance formula, and participants on that date received hypothetical opening account balances pursuant to a specified formula.  Compl. ¶¶ 16, 20.  Going forward, participants earned pay credits and interest

---

[5] The Complaint names the Plan as a "necessary party for the relief requested," but it is not a defendant and none of the claims are asserted against it.  Compl. ¶ 11; Counts I-III.

credits each month on that opening balance under the cash balance formula.  Compl. ¶¶ 17, 31.
Individuals who were participants in the Plan as of December 31, 1998, also continued to earn
benefits under the traditional formula, until it was frozen on December 31, 2003.  Compl. ¶ 19.  At
benefit commencement, participants would then receive the greater of their cash balance benefit
or their frozen traditional final average pay formula benefit as of December 31, 2003.  Compl. ¶¶
22-23.

The 1999 and 2000 SPDs[6] explain all of this.  They provide:

> After December 31, 2003, your accrued benefit under the prior formula **will be
> frozen** *and will continue to act as a minimum benefit.  Note that if you leave Morgan
> after December 31, 2003, your additional years of age and service will count
> toward your eligibility for early retirement benefits under the prior formula.
> However,* **the amount of your benefit under the prior formula will be calculated
> using your service and final average earnings through December 31, 2003**.
>
>           * * *
>
> • The prior formula will be used to calculate your benefit (including any early
> retirement subsidies), and this benefit will be converted into the offered distribution
> options — a monthly annuity or a lump sum payment.
>
> • This amount will be compared to your benefit under the same payment option
> from your Cash Balance Plan account balance as of the date you leave Morgan.
>
> • You will receive the **larger** of the two benefits (**either** the accrued benefit under
> the prior formula or the Cash Balance Plan account balance).
>
>           * * *
>
> All forms of payment will be compared with the applicable benefit under the Cash
> Balance Plan and the prior formula.  **The greater amount will be payable to you**.

Ex. A p. 13, 16 (emphasis added); *see also* Ex. B p. 12, 15.[7]

---

[6] As will be discussed below, *see infra* at 8, because the SPDs are Plan documents, this Court can
consider them in the context of a Rule 12(b)(6) motion to dismiss.

[7] The 2005 SPD contains a section titled "Appendix C – 2001 Morgan Participants," which applies
to participants in the Plan as of December 31, 2001, including Plaintiff.  *See* 2005 SPD, Ex. C p.
43.  That section of the SPD explains that "[t]he amount of your accrued benefit under the 2001
Morgan final average pay formula was determined by a calculation that took into account your

Plaintiff alleges that, in 2002, he began receiving annual pension benefit statements, which the Complaint quotes and therefore incorporates by reference.  Compl. ¶¶ 29, 31.  These statements reflected Plaintiff's benefit under the cash balance formula and include the following disclaimer: "This statement does not reflect any minimum benefit that you might have accrued under a prior plan formula." *See, e.g.*, Exs. D and E p. 2.  The statements then invite Plan participants who want "more information about minimum benefits" to call HRAnswers, a hotline providing answers to such questions. *Id.*  SPDs issued after 2002 also explain that the pension benefit statements "reflect only the benefit earned under the cash balance formula and do[] not take into account the minimum benefit.  However, projections prepared through accessHR will reflect the greater of your cash balance formula or your benefit provided under the final average pay formula." *See, e.g.*, 2005 SPD, Ex. C p. 46.

### B.   Plaintiff's Employment and Release Agreement

Plaintiff worked for Morgan and its successors until his employment terminated on March 24, 2019.  Compl. ¶¶ 2, 35. Plaintiff terminated his employment in 2019 when he was age 53. Compl. ¶ 35.  The Complaint alleges no facts about Plaintiff's age-65 normal retirement benefit under the traditional formula or his cash balance account benefit.  Compl. ¶ 14.  Plaintiff admits

---

age, salary, credited service, and Social Security covered compensation, *all of which were frozen* as of December 31, 2003, or your termination of employment, if earlier." *Id.* p. 46 (emphasis added).  The 2005 SPD also explains why the minimum benefit based on the prior formula might exceed the value of the cash balance account:

> In determining the value of a minimum benefit, the plan uses your age at the date of distribution and the annual conversion interest rate in effect on that date to determine the lump-sum value of any annuity benefit.  The interest rate can significantly impact the lump-sum value of an annuity.  If the conversion interest rate is low, then the lump-sum value will be relatively high.  If the conversion interest rate is high, then the lump-sum value will be relatively low.  The conversion interest rate changes each year.

*Id.* p. 46.

that at the time of his termination in 2019, Plaintiff had qualified for a subsidized early retirement benefit under the traditional formula to which he was not entitled as of January 1, 2004.[8]  Compl. ¶ 46.  Plaintiff requested a new pension election packet in 2021 when he was age 55, and additional information on how this benefit (at the early retirement age of 55) was calculated.  Compl. ¶ 42. These worksheets showed that at age 55, his larger benefit would be a subsidized early retirement benefit under the traditional formula.  Compl. ¶ 45.

After his termination, and in exchange for a severance payment and other benefits, Plaintiff signed a Release Agreement in 2019, which provided, in pertinent part:

> **<u>Release of Claims</u>**
>
> I, Joseph Pessin . . . sign this Release Agreement [] in exchange for the severance pay, severance-related benefits and career services . . . .
>
> I hereby release JPMorgan Chase & Co. (and any predecessor or successor entities thereof), its . . . directors, officers, . . . administrators, . . . and any fiduciaries of any employee benefit plan . . . from all liability for any claims or potential claims relating to my employment with the Company and/or the termination of my employment . . . . I understand that "claims" includes claims I know about and claims I do not know about, as well as the continuing effects of anything that happened before I sign below.
>
> The claims covered by this Release include but are not limited to . . . any claims under any federal . . . law, including, but not limited to . . . the Employee Retirement Income Security Act of 1974 ("ERISA") **including, but not limited to, breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA[.]**

Ex. F at p. 1 (emphasis added).  The only ERISA claims excluded from Plaintiff's release are claims "under the terms of any pension plan or deferred compensation plan for payment of any vested benefits."  *Id.* p. 2.

---

[8] The SPDs explained that although the final average pay benefit would be frozen as of December 31, 2003, "additional years of age and service will count toward your eligibility for early retirement benefits under the prior formula."  *See supra* at 4.

The Release Agreement also contained the following covenants not to sue on any released claims and not to act as a class representative (or class member) on any claims against the Company, a defined term that includes Defendants.  It provides:

**Agreement Not to Sue**

I agree that I will not file a lawsuit or initiate any other legal proceedings for money or other relief in connection with the claims I am releasing above.

\* \* \*

I agree that if a class, collective or representative action is or has been brought against the Company and I could be a participant in such action because of my employment with the Company, I will not act as a class, collective or representative action representative, will not be a named plaintiff and will opt out of the class, collective or representative action, or refrain from opting in, and I will not accept any monetary relief from the action.

Ex. F p. 2.

## III.   ARGUMENT

### A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The "complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "[M]ere conclusory statements[] do not suffice," *id.*, and "courts cannot accept 'legal conclusions, unsupported conclusions, unwarranted inferences, unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations,'" *Salvador v. Adirondack Park Agency of N.Y.*, 35 F. App'x 7, 11 (2d Cir. 2002) (citation omitted).  The Supreme Court has recognized that a Rule 12(b)(6) motion to dismiss is an "important mechanism for

weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Additionally, on a motion to dismiss, this Court may consider documents integral to or explicitly relied upon in the Complaint without converting the motion into one for summary judgment. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citation omitted). Courts may also consider matters of which they may take judicial notice, such as documents in the public record. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

"In the context of ERISA actions, courts will consider the underlying retirement plan documents in connection with a motion to dismiss," including SPDs. *Hudson v. Nat'l Football League Mgmt. Council*, No. 18-04483, 2019 WL 5722220, at *8, *21 (S.D.N.Y. Sept. 5, 2019) (considering SPDs on Rule 12(b)(6) motion although the SPDs were not attached to complaint), *R. & R. adopted as modified*, 2019 WL 4784680 (S.D.N.Y. Sept. 30, 2019); *see also Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (district court properly relied on SPDs introduced by defendants when ruling on Rule 12(b)(6) motion); *Degrooth v. Gen. Dynamics Corp.*, 837 F. Supp. 485, 487 (D. Conn. 1993), *aff'd*, 28 F.3d 103 (2d Cir. 1994) ("The SPD is the primary vehicle for informing plan participants and beneficiaries of their rights under an ERISA plan. When participants file a lawsuit to determine the scope of those [ERISA] rights, the SPD is surely integral to that determination, even if it is not attached as an exhibit to the complaint.") (citation omitted).

B.     **The Complaint Fails to State a Claim upon Which Relief Can Be Granted**

Plaintiff here asserts three ERISA causes of action:  breach of fiduciary duty (Count I), breach of fiduciary duty through failure to adequately monitor other fiduciaries (Count II), and

8

failure to provide accurate pension benefit statements (Count III).  Each of Plaintiff's claims fails as a matter of law.

1.    **Plaintiff Fails to State a Claim in Count I Because the Summary Plan Descriptions Disclose the Information Plaintiff Claims Was Required and Also Because Count I Is Time-Barred**.

    a.    *Count I Fails as a Matter of Law Because Defendants Disclosed the Information Plaintiff Alleges Was Required.*

In Count I, Plaintiff contends that Defendant JPMorgan Chase U.S. Benefits Executive ("Plan Administrator") breached its fiduciary duties under ERISA Section 404(a), 29 U.S.C. § 1104(a), by failing to disclose that Plan participants' traditional final pay average formula benefits would become frozen as of 2003, and that they would only receive the greater of their frozen traditional formula benefit or their cash balance benefit whenever they retired, but not both. Compl. ¶¶ 58-60.

Although a court ordinarily "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the plaintiff . . . that tenet does not extend to 'factual assertions . . . that are contradicted by'" documents upon which the court may properly rely at the motion-to-dismiss stage.  *NRW, Inc. v. Bindra*, No. 12-CV-8555 RJS, 2014 WL 4449779, at \*4 (S.D.N.Y. Sept. 10, 2014) (alteration in original) (quoting *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011)); *see also Ahearn v. Brachowicz*, No. 13-CV-8007 SAS, 2014 WL 3408389, at \*3 (S.D.N.Y. July 10, 2014) ("Allegations in the complaint that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." (quoting *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 175 n.1 (2d Cir. 2013))).  Here, the Plan documents contradict the Complaint and demonstrate that the Plan fiduciaries did in fact disclose the facts Plaintiff alleges were not disclosed.

The 1999 and 2000 SPDs explained that anyone who was a participant of the Plan as of December 31, 1998 would only continue to accrue benefits under the traditional final average pay formula until December 31, 2003.  Ex. A p. 13; Ex. B p. 12.  The SPDs then explained that, after December 31, 2003, participants' "accrued benefits under the prior [final average pay] formula **will be frozen and will continue to act as a minimum benefit**"[9] and each participant would be entitled to "receive **the larger of** the two benefits (**either** the accrued benefit under the prior formula or the Cash Balance Plan account balance)."  Ex. A p. 13 (emphasis added); *see also* Ex. B p. 12.  In other words, the SPDs summarize precisely how the Plan actually works – even according to the Complaint.  Compl. ¶¶ 19-22.  That is all that is required.  29 U.S.C. § 1022(b) (listing required contents of an SPD); *Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 96 (2d Cir. 2008) ("In accordance with their obligations under ERISA, 29 U.S.C. § 1022, Appellees have issued Summary Plan Descriptions ('SPDs'), which summarize the terms of their plans.").  Because the 1999 and 2000 SPDs provided plan participants with the precise information Plaintiff alleges was not disclosed, he has failed to state a cognizable claim.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 192-93 (2d Cir. 2007) (affirming Rule 12 dismissal of claims challenging sufficiency of plan disclosures where SPD "reasonably apprised plan participants and beneficiaries of their rights under the deferred vested retirement benefit . . . by apprising participants and beneficiaries of the deferred vested retirement benefit in general and by specifically distinguishing that benefit from the early retirement benefit")[10]; *Healy v. Nw.*

---

[9] The 2005 SPD likewise discloses that benefits under the traditional final average pay formula "were frozen as of December 31, 2003."  Ex. C p. 46.

[10] In *McCarthy*, the Second Circuit explained: "the Vesting section of the Summary Plan Description . . . is definite in informing a participant that a reduction will occur under the early payment option and gives some information, albeit limited, about the method of reduction, stating that the amount of the benefit will be reduced actuarially, resulting in a lower Plan benefit than if

*Airlines, Inc./Delta Air Lines, Inc.*, No. 12–cv–733, 2012 WL 2993898, at *3 (E.D.N.Y. July 20, 2012) (dismissing fiduciary breach claim based on failure to disclose pension plan offset provision when plaintiff retired because the defendant provided the plaintiff with an SPD during his employment "which, the Court finds, indisputably contains an explanation of the offset provision"); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004) ("[I]f accurate written information is provided, as it was here, then the plaintiff [is] unfortunately out of luck."). As a result, Count I fails as a matter of law.[11]

   b. *Plaintiff's Breach of Fiduciary Duty Claim is Time-Barred*.

  In addition, Plaintiff's breach of fiduciary duty claim in Count I is time-barred.

  The statute of repose for fiduciary breach claims under ERISA is six years. 29 U.S.C. § 1113(1). Here, the SPDs issued in 1999 and 2000 disclosed all the information required. And to the extent Plaintiff claims he was entitled to something more, he had to file suit within six years of these SPDs, by 2005, or 2006 at the latest. Because 29 U.S.C. § 1113(1) is a statute of *repose* rather than a statute of *limitations*, this requirement is absolute. *See Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017) (citing to 29 U.S.C. § 1113(1) as an example of a

---

the reduction table in the Early Retirement Benefit section was used. The information provided about the method of reduction, although presented only in brief summary form, is sufficient under Section 102 of ERISA and the Labor Department's regulations, which permit some details about a particular option associated with a particular benefit to be summarized." 482 F.3d at 197.

[11] Moreover, as Plaintiff himself recognizes, the language in the pension benefit statements discussing that during employment *the cash balance formula benefit* was growing with pay and interest credits was a true statement of fact. *Compare* Compl. ¶ 31 (quoting pension benefits statement language about growth in cash balance formula benefits during employment) *with* ¶ 17 (admitting that this is how cash balance plans work). The fact that the minimum benefit calculated by the frozen traditional final accrual benefit might end up being higher than the (still growing) cash balance benefit does not make these statements misrepresentations. And the pension benefit statements themselves acknowledged that the statements did not reflect any "minimum benefit" under prior plan formulas and told participants what number to call to request more information.

statute of repose); *see also Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 153 n.9 (S.D.N.Y. 2017) (explaining that "statutes of limitations and statutes of repose serve distinct purposes . . . . Statutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims and begin to run when the cause of action accrues.  In contrast, statutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time and begin to run on the date of the last culpable act or omission of the defendant." (citation omitted)).  Since more than two decades have elapsed between the issuance of the 1999 and 2000 SPDs and the filing of Plaintiff's Complaint, Count I is time-barred.  *See Pirro v. Nat'l Grid*, 590 F. App'x 19, 21 (2d Cir. 2014) (affirming dismissal of ERISA disclosure claim where "at the latest" the deadline to file  "Plaintiffs' claims began to run when the Summary Plan Description ('SPD') was distributed to plan participants."); *Murphy v. Int'l Bus. Machs. Corp.*, No. 10-6055, 2012 WL 566091, at *4 (S.D.N.Y. Feb. 21, 2012) (concluding that the plaintiffs' ERISA fiduciary duty disclosure claims were time-barred under Section 1113).

Nor does the "fraud or concealment" exception in 29 U.S.C. § 1113(2) save Plaintiff's claim.  For this exception to the statute of repose to apply, a plaintiff must plead fraud allegations "with particularity," specifying the "time, place, speaker, and content of the alleged misrepresentations," explaining "how the misrepresentations were fraudulent," and describing the events giving rise to a "strong inference" that a defendant had an intent to defraud, knowledge of the falsity of the statements, or a reckless disregard for the truth.  *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 674-75 (S.D.N.Y. 2018) (quoting *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012)), *aff'd sub nom. Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44 (2d Cir. 2020); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 190 (2d Cir. 2001).

No such allegations exist here. Although the Complaint alleges that the Plan Administrator did not tell Plaintiff that benefits under the traditional formula would be frozen as of December 31, 2003, the SPDs before this Court expressly communicate that precise information. The annual pension statements also expressly stated that they were only communicating to Plaintiff his cash balance account benefit, and that he should call if he wanted additional information about his frozen traditional benefit. Exs. D and E p. 2. And when Plaintiff did call with questions, he was told the amounts of his benefits and how those amounts were calculated. Compl. ¶¶ 42-45. That is not fraud or concealment, so Plaintiff's claims are time-barred.

### 2.      Plaintiff Fails to State a Claim in Count II for Failure to Adequately Monitor.

In Count II, Plaintiff alleges a failure-to-monitor claim against the Board of Director of JPMorgan Chase Bank and JPMorgan Chase & Company (the "Board"). "A claim for breach of the duty to monitor requires an antecedent breach to be viable." *Cunningham v. USI Ins. Servs., LLC*, No. 21-1819, 2022 WL 889164, at *6 (S.D.N.Y. Mar. 25, 2022) (dismissing failure-to-monitor claim as derivative of insufficiently pleaded breach-of-fiduciary-duty claim). Here, Plaintiff claims the Board failed to monitor the Plan Administrator to ensure disclosure of complete and accurate information—i.e., that participants' traditional final average pay formula benefit would be frozen, and that the frozen benefit might exceed the value of the cash balance formula benefit, in which case the Plan would only pay the higher frozen benefit. *See* Compl. ¶ 65. As a result, Plaintiff's failure-to-monitor claim is derivative of his breach of fiduciary duty claim. Absent a viable claim for breach of fiduciary duty by the Plan Administrator, the Complaint's failure-to-monitor claim fails in turn. *See, e.g.*, *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Plaintiffs' latter two claims—failure to monitor and breach of co-fiduciary duty—constitute derivative claims that cannot survive absent a viable claim for breach

of a duty of prudence."); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 764 (S.D.N.Y. 2015), *aff'd sub nom. Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016) ("The duty to monitor claim . . . fails because the [complaint] fails to allege plausibly any primary breach of fiduciary duty on the part of the Plan Committee Defendants.").

Even if Plaintiff had adequately pled an underlying breach of fiduciary duty (he has not), he has not adequately alleged a breach of the duty to monitor against the Board here.  Plaintiff's only allegations against the Board are contained in paragraphs 10, 65, and 66 of the Complaint. These paragraphs allege *no facts* against the Board, but instead are just bare legal conclusions. Legal conclusions do not suffice to state a claim, so Count II should be dismissed.  *See, e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." (citation and alteration omitted)).

### 3. Plaintiff Fails to State a Claim in Count III for Inaccurate Pension Benefit Statements.

#### a. *Plaintiff's Allegations About the Pension Benefit Statements Do Not State a Violation of ERISA Section 105.*

ERISA Section 105(a), 29 U.S.C. § 1025(a), requires plan administrators to provide participants with a "pension benefit statement" that discloses the "total benefits accrued" (i) every three years or (ii) upon written request. 29 U.S.C. §§ 1025(a)(1)(B)(i)–(ii), 1025(a)(2).  Plaintiff alleges that when providing these pension benefit statements after conversion to the cash balance formula, the Plan Administrator did not disclose information about Plaintiff's frozen traditional

formula benefit at early retirement age.[12]  As such, Plaintiff seeks penalties under ERISA Section 502(c), 29 U.S.C. § 1132(c), for the alleged violation of 29 U.S.C. § 1025.

The Second Circuit has explained that a claim under Section 502(c), 29 U.S.C. § 1132(c), is a penalty claim.  *See, e.g.*, *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 129-32 (2d Cir. 2017) ("Section 502(c)(1) is punitive in nature.").  As a result, it must be "narrowly construed." *Williamson v. Travelport, LP*, 953 F.3d 1278, 1293-94 (11th Cir. 2020) ("[B]ecause § 1132(c) imposes penalties, it must be strictly and narrowly construed."); *see also Bergamatto v. Bd. of Trs. of the NYSA-ILA Pension Fund*, 933 F.3d 257, 268 (3d Cir. 2019) (explaining that Section 502(c) is a penal provision and should be "leniently and narrowly construed"); *Kujanek v. Hous. Poly Bag I, Ltd.*, 658 F.3d 483, 489 (5th Cir. 2011) (same).

Here, the Complaint admits that the normal retirement age under the Plan is 65.  Compl. ¶ 14.  The Complaint, however, alleges *no facts* about Plaintiff's age-65 normal retirement benefit, or his cash balance account accrued benefit.  Instead, Plaintiff focuses on the value of his frozen subsidized early retirement benefit under the traditional defined benefit formula that he earned as of age 53 or 55.  Compl. ¶¶ 35, 42-46.[13]  The pension election packet that Plaintiff references in paragraph 42 of the Complaint uses a benefit commencement date of July 1, 2021, when Plaintiff was age 55, which could only be a subsidized early retirement benefit.  Ex. G pp. 1, 12-13 (2021 Election Packet).  But 29 U.S.C. § 1025 does not require any disclosures about early retirement

---

[12] As noted *supra*, the Complaint is deliberately vague about what benefits Plaintiff earned that were payable at what age.  Nevertheless, because the normal retirement age under the Plan is 65 and based on Plaintiff's age when he terminated employment and received benefit election paperwork (age 53-55, in 2019-2021), his allegations could only be referencing the subsidized early retirement benefits under the traditional formula.  *See* Compl. ¶¶ 12, 15, 35, 43, 46.

[13] According to the Complaint, Plaintiff would not reach age 65 until approximately 2031.  Compl. ¶ 35.  The calculations were for pension benefits payable to him in 2019 and 2021, when he was 53 and 55 years old.  Compl. ¶¶ 43, 45.

benefits at all, let alone a comparison of early retirement benefits payable under different formulas. *See* 29 U.S.C. § 1025(a)(2) (listing information required).

In fact, where Congress sought to impose obligations with respect to early retirement benefits, it explicitly did so in the statutory language. For example, 29 U.S.C. § 1054(g) provides that:

> For purposes of paragraph (1), a plan amendment which has the effect of—
> (A) eliminating or reducing *an early retirement benefit* or a *retirement-type subsidy* (as defined in regulations), or
> (B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment *shall be treated as reducing accrued benefits*.

29 U.S.C. § 1054(g) (emphasis added). But that provision only applies "for purposes of paragraph 1" of 29 U.S.C. § 1054(g). If Congress intended 29 U.S.C. § 1025(a) to require disclosures regarding early retirement benefits, or retirement-type subsidies, it would have said so explicitly just as it did in 29 U.S.C. § 1054(g).[14] That deliberate choice by Congress must be respected. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993) (ERISA is a "comprehensive and reticulated" statute).

Moreover, by their terms, 29 U.S.C. §§ 1025 and 1132(c) do not create a cause of action for an inaccurate benefit statement, as opposed to the wholesale failure to provide a benefit

---

[14] As a practical matter, if 29 U.S.C. § 1025 required disclosure of early retirement benefit amounts, plans would have to disclose the amount a participant was entitled to at each age (year and month) that a participant could possibly be eligible for an early retirement benefit, because the amount a participant would be entitled to if he retires in the future at age 55 can (and usually does) differ from the amount the participant would be entitled to if he retired in the future at age 56, or 57, or 57 and 3 months, or 57 and 6 months, and so on. No statute, regulation or court decision requires such a disclosure.

statement at all.   In *Bafford v. Northrop Grumman Corp.*, the plaintiffs alleged that the plan violated 29 U.S.C. § 1025 by "failing to provide accurate statements." No. 18-10219, 2022 WL 294815, at *4 (C.D. Cal. Feb. 1, 2022).  The statements in that case contained "highly inaccurate benefit estimates" because of a calculation error.   *Id*.   The court evaluated the plain language of the statute and concluded that it did not provide a cause of action for inaccuracies because "[n]owhere in ERISA [§ 1025] . . . is there any plain language suggesting that an inaccuracy in a statement constitutes an ERISA violation." *Id*. at *5; *see also Hawkes v. Wells Fargo & Co.*, No. 17-CV-00632-JSW, 2018 WL 11182067, at *5 (N.D. Cal. May 23, 2018) (dismissing claim under 29 U.S.C. § 1025 because allegations that plan administrator provided inaccurate statements were "not sufficient to show that the Plan Administrators actively and deliberately misled Plaintiff and that the facts alleged [did] not amount to the type of 'egregious misconduct' that would entitle Plaintiff" to individual substantive relief).

Thus, Plaintiff has failed to state a claim regardless of how his allegations are characterized. By its terms, 29 U.S.C. § 1025(a) does not require disclosure of the information Plaintiff claims was missing.[15]  And neither it nor Section 1132(c) authorizes a cause of action for an inaccurate benefit statement.  This is all the more true when viewed through a strict and narrow construction of the statute, as required.  *See supra* at p. 15.  Therefore, Count III fails as a matter of law and should be dismissed.

---

[15] As explained above, the pension statements also told Plaintiff that he could call if he wanted any information or had questions about his frozen traditional formula benefit.  Exs. D and E p. 2.  When he called, he received the information he requested.  Compl. ¶¶ 42-45.

        b.    *Plaintiff's Claim That the Plan Administrator Issued Inadequate*
              *Pension Benefit Statements Is Time-Barred.*

Plaintiff's claim in Count III also is time-barred.  ERISA does not provide a statute of limitations for claims under Section 502(c), 29 U.S.C. § 1132(c).  *See Harless v. Rsch. Inst. of Am.*, 1 F. Supp. 2d 235, 239-40 (S.D.N.Y. 1998).  Courts therefore apply the most analogous state statute of limitations.  *See Brown*, 868 F.3d at 127 ("Since ERISA does not specify a statute of limitations for Section 502(c)(1) claims, courts apply the state statute of limitations that is the nearest analogue.").  Thus, in *Brown*, for example, the Second Circuit applied the Connecticut one-year limitations period for "forfeiture upon a penal statute" to the plaintiff's Section 502(c) claim.  *Id.*

Under New York law, when, as here, "a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998); *see also* N.Y. C.P.L.R. § 202.  Plaintiff alleges that he resides in Pennsylvania, *see* Compl. ¶ 6, and he is seeking a financial penalty for statements sent to him in Pennsylvania.  Therefore, his claims are subject to the shorter of New York's or Pennsylvania's limitations period.

Because Section 502(c) is a cause of action for statutory penalties, state statutes of limitations applicable to statutory penalties are most appropriate.  *Brown*, 868 F.3d at 129 ("It appears that we have never explicitly held that Section 502(c)(1) is punitive in nature (rather than remedial) for the purpose of ascertaining its statute of limitations.  *We do so now* . . . ." (emphasis added)); *see also Tritt v. Automatic Data Processing, Inc.*, 2008 U.S. Dist. LEXIS 41208, at *23-25 (D. Conn. May 27, 2008) (collecting cases).  Therefore, New York Civil Practice Law and Rule

215(4) (one year)[16] and Section 5524(5) of Title 42 of the Pennsylvania Consolidated Statutes (two years) provide the possible limitations periods for Count III. *See Valentino v. Cont'l Cas. Co.*, No. CIV. A. 99-1101, 2000 WL 33341979, at *2 (W.D. Pa. June 29, 2000) (holding that Section 5524(5) was most analogous for a claim asserted under ERISA's penalty provision, Section 502(c)(1)).  And because the New York provision providing a one-year limitations period is the shorter of the two, it applies.

Plaintiff filed this action on March 25, 2022.  But the pension statements that Plaintiff challenges, and alleges he received starting in 2002, make clear on their face that they do "not reflect any minimum benefit that [participants] might have accrued under a prior plan formula." Exs. D and E p. 2.  Moreover, the 2005 SPD confirms that the amounts shown on the pension statements do not and will not take into account the minimum benefit, but that participants can obtain information and calculations involving the minimum benefit through accessHR.  *See* Ex. C p. 46.  Thus, Plaintiff's claims accrued when he received the statements and the 2005 SPD, and Count III is time-barred.  *Hirt v. Equitable Ret. Plan for Emps., Managers & Agents*, 285 F. App'x. 802, 804 (2d Cir. 2008) (affirming dismissal of ERISA disclosure claim where "the distribution of the 1992 SPD constituted a clear repudiation" of the information plaintiff sought and "to the extent that a plan participant had received insufficient notice of a plan amendment . . . the SPD unequivocally repudiated that understanding").

---

[16] New York Civil Practice Law and Rule 215(4) provides a one-year limitations period for an "action to enforce a *penalty* or forfeiture created by statute *and given wholly or partly to any person who will prosecute*; if the action is not commenced within the year by a private person, it may be commenced on behalf of the state, within three years after the commission of the offense, by the attorney-general or the district attorney of the county where the offense was committed." (emphasis added).

### C.     Plaintiff's Claims Are Subject to Dismissal Because Plaintiff Released Each Claim and Agreed Not to Sue or Participate in a Class Action (Counts I-III)

Plaintiff's failure to state any viable claims based on facts pled (consistent with Plan documents and documents incorporated by reference) provides sufficient grounds to dismiss the Complaint in its entirety.  But Plaintiff's claims are also subject to dismissal because they are barred by the Release Agreement and covenant not to sue Plaintiff agreed to in exchange for severance payment and benefits.[17]

The Release Agreement expressly states that it specifically applies to ERISA claims, including but not limited to "breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA." Ex. F p. 1.  Those are Plaintiff's claims here.  *See* Compl. ¶¶ 59, 64, 69, 71 (Counts I and II pursuant to 29 U.S.C. § 1132(a)(3) and Count III pursuant to 29 U.S.C. §§ 1132(a)(3) and (c)).[18]

---

[17] Admittedly, the Release Agreement is not attached to or referenced in the Complaint.  Should this Court not grant the motion to dismiss for failure to state a claim on the other grounds asserted here, Defendants request that this Court consider the Release Agreement either (i) pursuant to Rule 12(b)(1), *see Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 104 n.4 (D.D.C. 2019) (dismissing ERISA class action pursuant to release, and explaining that "[c]ourts considering the effect of releases at the motion to dismiss stage have interpreted them as asserting a lack of subject matter jurisdiction under Federal Rule[] of Civil Procedure 12(b)(1)"), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020), or (ii) pursuant to Rule 12(d) and treat this portion of the argument as one for summary judgment. *See, e.g.*, *Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 72-74 (D.D.C. 2013) (where plaintiff brought ERISA breach of fiduciary duty claims, and defendants moved to dismiss those claims under Rule 12(b)(6) as waived by severance and release agreement, converting motion to one for summary judgment and dismissing), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014); *cf. Finz v. Schlesinger*, 957 F.2d 78, 83 (2d Cir. 1992) (affirming grant of summary judgment on ERISA claims based on release covering those claims).

[18] The Release Agreement has a carve-out for claims "under the terms of any pension plan or deferred compensation plan for payment of any vested benefits."  That does not apply here as Plaintiff is not claiming "vested benefits" under "the terms of the Plan," which would be brought under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Instead, Plaintiff alleges fiduciary breach disclosure and penalty claims.  *Stanley*, 394 F. Supp. 3d at 108 (dismissing complaint asserting fiduciary breach and Section 1132(a)(3) claims based on release and holding that the carve-out for "vested benefits under employee benefit plans" did not apply because "[u]nderstood

Plaintiff further covenanted not to sue on such claims, stating: "I agree that I will not file a lawsuit or initiate any other legal proceedings for money or other relief in connection with the claims I am releasing above." Ex. F p. 2. The Release Agreement also specifically states: "I understand that 'claims' includes . . . claims I do not know about, as well as the continuing effects of anything that happened before I sign below." *Id.* p. 1. Because Plaintiff's breach of fiduciary duty and notice claims all fall squarely within the scope of the Release Agreement, Plaintiff is barred from bringing this action. *See Anderson v. Xerox Corp.*, 614 F. App'x 38, 39 (2d Cir. 2015) (affirming dismissal and holding that ERISA claims were released because the plaintiff signed a release agreement "relinquishing 'any and all claims of any kind, known or unknown'—including ERISA claims—arising out of 'facts which had occurred prior to the date of the Release.'" (citation and alteration omitted)); *see also, e.g.*, *Russell*, 945 F. Supp. 2d at 77-79 (release of all ERISA claims "whether now known or known, suspected or unsuspected" that arose before a particular date barred ERISA breach of fiduciary duty claims); *Howell*, 633 F.3d at 558-61 (release of all ERISA claims other than claim for benefits barred ERISA breach of fiduciary duty claims).

Finally, Plaintiff's Complaint must also be dismissed insofar as he seeks to proceed on a class-action basis and serve as a class representative. In the Release Agreement, Plaintiff agreed not to participate in *any* class action against Defendants, including as a class representative. *See*

---

in the context of ERISA, such claims plainly refer to contractual, or 'plan-based,' claims of the kind that typically are brought pursuant to ERISA § 502(a)(1)(B)"); *Howell v. Motorola, Inc.*, 633 F.3d 552, 560-61 (7th Cir. 2011) (affirming dismissal of fiduciary breach and Section 1132(a)(3) claims based on release with similar carve-out: "[a]pproached as a contractual matter, the only reading that makes sense is one under which the reservation of claims for benefits applies only to any specific benefits that had already vested in Howell's 401(k) plan by the time that he signed"); *In re SunTrust Banks, Inc. ERISA Litig.*, No. 08-03384, 2016 WL 4377131, at *2 (N.D. Ga. Aug. 17, 2016) (dismissing fiduciary breach claims based on release and holding that release carve-out does not apply because "claims for vested benefits due under the plan can only be brought under § 502(a)(1)(B)").

*supra* at 7.  Courts have consistently enforced contractual class-action waivers like the one Plaintiff agreed to here.  *U1it4Less, Inc. v. FedEx Corp.*, No. 11-1713, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015); *Roman v. Spirit Airlines, Inc.*, 482 F. Supp. 3d 1304, 1315 (S.D. Fla. 2020), *aff'd*, No. 20-13699, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ("Indeed, various courts have held that the enforceability of a class action waiver should be resolved by way of a motion to dismiss and before discovery begins." (citation omitted) (collecting cases)).  This Court should do the same.

## IV.   <u>CONCLUSION</u>

For all these reasons, Defendants respectfully request that this Court grant this Motion and dismiss all of Plaintiff's claims with prejudice.

Dated: July 12, 2022                    Respectfully submitted,

                                              By: */s/ Jeremy P. Blumenfeld*

Jeremy P. Blumenfeld
New York Bar No. 800811
jeremy.blumenfeld@morganlewis.com

Alexis Caris
*Pro Hac Vice forthcoming*
alexis.caris@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001

Sari Alamuddin
*Pro Hac Vice forthcoming*
sari.alamuddin@morganlewis.com

Eric Mackie
*Pro Hac Vice forthcoming*
eric.mackie@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive
Chicago, IL  60606
Tel: (312) 324-1000
Fax: (312) 324-1001

Stephanie Reiss
*Pro Hac Vice forthcoming*
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
Tel: (412) 560-3300
Fax: (412) 560-7001
stephanie.reiss@morganlewis.com

*Attorneys for Defendants.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 12, 2022, I caused the foregoing document to be filed via the Court's

ECF system, which caused electronic notification upon all counsel of record.


<u>/s/ Jeremy P. Blumenfeld</u>

25