**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH PESSIN, on behalf of himself and all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>JPMORGAN CHASE US BENEFITS EXECUTIVE, as Plan Administrator of the JPMorgan Chase Retirement Plan, BOARD OF DIRECTORS OF JPMORGAN CHASE BANK AND J.P. MORGAN CHASE & COMPANY, and JPMORGAN CHASE RETIREMENT PLAN,<br><br>                Defendants. | Case No. 1:22-cv-02436<br><br><br>**AMENDED CLASS ACTION COMPLAINT** |

Plaintiff, by and through his counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff Joseph Pessin, a participant in the Defendant JPMorgan Chase Retirement Plan ("JPMC Plan"), brings this action on his own behalf and on behalf of all similarly situated JPMC Plan participants and their beneficiaries and estates, pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").

2.      Plaintiff worked for Defendant JPMorgan Chase & Company ("JPMC") and its predecessors for more than 31 years. For the last 15 years of his employment, he earned no benefit under the JPMC Plan, his benefit having been effectively frozen as of December 31, 2003. This was so because the benefit he had accrued through December 30, 2003, exceeded the benefit that he accrued over the subsequent years, a phenomenon known as "wear-away" because the benefit under a prior benefit formula must be worn away before the participant earns a benefit under a new formula.

3.      Plaintiff and similarly situated JPMC Plan participants did not know that their pensions were subject to wear-away. Summary plan descriptions (SPDs) issued by the JPMC Plan Administrator did not disclose wear-away, and assured participants that their benefits under the prior formula were reflected in their cash balance accounts and that the cash balance accounts would grow annually. The JPMC Plan Administrator reinforced this misleading information by providing participants with pension statements every year that falsely told them that their pension benefits were increasing when they were not. In so doing, the JPMC Plan Administrator breached its fiduciary duties to JPMC Plan participants and violated ERISA disclosure requirements, including the requirement to provide an SPD that explains the full import of the

1

plan's material terms and the ERISA provision requiring that a plan administrator provide participants with statements of their accrued benefit – not statements of the benefit they would be accruing were their benefits not frozen.

## JURISDICTION

4.    This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f).

## VENUE

5.    Venue lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the JPMC Plan is administered in this District, some of the alleged breaches took place in this District, and Defendants JPMorgan Chase U.S. Benefits Executive and Board of Directors of JP Morgan Chase Bank and JPMC may be found in this district.

## PARTIES

6.    Plaintiff Joseph Pessin is a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the JPMC Plan. Prior to the creation of the JPMC Plan, Plaintiff was a participant in the Retirement Plan for Employees of Morgan Guaranty Trust Company of New York and Affiliated Companies for United States Employees ("Morgan Plan") and its successor, the Cash Balance Plan of Morgan Guaranty Trust Company of New York and Affiliated Companies for United States Employees, which is one of the predecessors of the JPMC Plan. Plaintiff resides in Garnet Valley, Pennsylvania.

7.    Defendant JPMorgan Chase U.S. Benefits Executive ("JPMC Plan Administrator") is the Plan Administrator of the JPMC Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). Under prior iterations of the JPMC Plan, the JPMC Plan

2

Administrator was JPMC's Director of Human Resources. References to the JPMC Plan Administrator herein include the current JPMC Plan Administrator and all prior JPMC Plan Administrators.

8.      The JPMC Plan Administrator is a named fiduciary of the JPMC Plan by reason of being named as the Plan Administrator in the JPMC Plan's governing document, and is also a fiduciary of the JPMC Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the JPMC Plan's assets, it exercises discretionary authority or discretionary control respecting management of the JPMC Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the JPMC Plan.

9.      The JPMC Plan at Article IX gives the JPMC Plan Administrator all the powers and duties of an administrator under ERISA, together with the powers under the JPMC Plan required to carry out such duties. In particular, the JPMC Plan specifies that the Plan Administrator has the duty to furnish to plan participants, publish, and file disclosures required by ERISA, including summary plan descriptions and reports of participants' benefit rights. Thus, the JPMC Plan Administrator is charged with providing pension benefit statements to JPMC Plan participants as required by ERISA § 105(a), 29 U.S.C. § 1025(a), among other responsibilities.

10.     Defendant Board of Directors of JP Morgan Chase Bank and JPMorgan Chase & Co. ("JPMC Board") is the entity charged by the JPMC Plan terms at Article IX with the fiduciary responsibility to designate and remove the Plan Administrator, and therefore has the duty to monitor the Plan Administrator's performance.

11.     Defendant JPMC Plan is an "employee pension benefit plan" within the meaning

of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and more precisely, a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The JPMC Plan is administered in this District. The JPMC Plan covers employees and former employees of JPMC and at least 20 affiliated employers. The JPMC Plan is named herein as a necessary party for the relief requested.

**FACTS**

12.     Plaintiff began working for J.P. Morgan & Co. ("Morgan") in 1987 and terminated employment in 2019, with more than 31 years of service.

13.     As a Morgan employee, Plaintiff became a participant in the Morgan Plan, a predecessor to the JPMC Plan.

14.     The Morgan Plan was a defined benefit pension plan that utilized a final average pay benefit formula and a normal retirement age of 65. A final average pay formula yields a monthly benefit commencing at normal retirement age that is based on factors including the participant's compensation and years of service. Specifically, the Morgan Plan provided "a retirement benefit for the life of the member alone in an annual amount equal to the product of (x) and (y), plus, if applicable, (z) where (x) is the sum of (i) 1.6% of the computed average salary of the member not in excess of his covered compensation plus (ii) 1.9% of such salary in excess of his covered compensation, and (y) is his years of credited service up to 30 years and (z) is, for a member in service on December 31, 1986, .5% of his computed average salary for each year of credited service in excess of 30 but not more than 40."

15.     The Morgan Plan provided an early retirement benefit for participants who commenced benefits at age 50 or later under a Rule of 70, including a subsidized early retirement benefit (1) at age 60 or (2) at age 55 with 20 years of service.

16.     The Morgan Plan at Article III provided that participants could elect to receive their pensions as an annuity or in a lump sum calculated in accordance with IRC § 417(e)(3), which prescribes applicable mortality tables and applicable interest rates for calculating the present value of an annuity benefit under a defined benefit pension plan.

17.     Effective December 31, 1998, the Morgan Plan was converted to a cash balance formula and renamed the Cash Balance Plan of Morgan Guaranty Trust Company of New York and Affiliated Companies for United States Employees ("Morgan Cash Balance Plan").

18.     A cash balance plan is a defined benefit plan that expresses each participant's benefit as a hypothetical "account balance" that is "credited" on a periodic basis with a percentage of the participant's compensation – a "pay credit" – and with "interest credits."

19.     Although a cash balance formula provides for a hypothetical account for each participant, a cash balance plan remains a defined benefit plan, not a "defined contribution" or "individual account" plan.

20.     Under the Morgan Cash Balance Plan terms, Morgan Plan participants received hypothetical "opening account balances" under the cash balance formula. Specifically, the Morgan Cash Balance Plan established "initial bookkeeping accounts" as of December 31, 1998, for employees who participated in the Morgan Plan immediately before December 31, 1998, and became participants in the Morgan Cash Balance Plan as of December 31, 1998.

21.     A Morgan Plan participant's opening account balance was calculated by converting his or her annuity benefit to a lump sum using actuarial assumptions selected by JPMC, including a six percent interest rate, a mortality assumption, and, for some age groups, an early retirement reduction factor.

22.     Pursuant to Section 4 of the Morgan Cash Balance Plan, the participants in the

5

Morgan Plan as of December 30, 1998, including Plaintiff, continued to accrue benefits under the final average pay formula through December 30, 2003. Thus, the pension of a participant who terminated employment during this period was calculated under both formulas, with the participant receiving the greater of the two benefits.

23. ERISA and the Internal Revenue Code make it unlawful for a plan amendment to reduce participants' accrued benefits: an employer may amend a plan to reduce future benefit accruals, but cannot retroactively reduce benefits that have already accrued.

24. Instead, the Morgan Cash Balance Plan provides at Section 4.4 that on and after December 31, 2003, a participant's accrued benefit shall not be less than the participant's accrued benefit as of December 30, 2003 "to the extent necessary to comply with the provisions of Section 411(d)(6) of the Internal Revenue Code and the regulations thereunder." Internal Revenue Code Section 411(d)(6) incorporates ERISA's "anti-cutback rule," providing that an amendment to a tax-qualified pension plan may not reduce a participant's accrued benefit.

25. As a result of this benefit comparison, a former Morgan Plan participant accrued no benefit under the Morgan Cash Balance Plan until their benefit under the cash balance formula exceeded their accrued benefit under the final average pay formula as of December 31, 2003.

26. This phenomenon is known as "wear-away," because the participant accrues no cash balance benefit until their final average pay benefit is worn away by benefit accruals under the cash balance formula. During wear-away, a participant's actual pension benefit does not increase with continued employment. Instead, any pay and interest credits earned by a participant merely reduce the gap between the value of the participant's cash balance "account" and the participant's final average pay benefit.

27.     The summary plan description ("SPD") for the Morgan Cash Balance Plan as of January 1, 1999, introduced Morgan Plan participants to the new plan. It promised plan participants that the cash balance plan "provides you with a baseline of steadily growing assets" and "builds your assets through Morgan credits and interest credits." It stated, "With the Cash Balance Plan, you know the value of your benefit at any given time, you can watch your balance grow, and if you're vested, you can take your benefit with you when you leave Morgan – even if you're not ready for retirement." The SPD continued, "Showing your benefits as an account balance makes it easier to understand the lump sum value of the benefit you have earned," and assured participants, "Once you are vested, the value of your Cash Balance Plan is yours to keep."

28.     Under the heading "How your plan benefit is determined," the 1999 SPD stated, "The Cash Balance Plan is expressed as an account balance that increases over time. Each month your account grows from two sources: Morgan credits and interest credits." This section also told former Morgan Plan participants that they were eligible for a "transition benefit" whereby their benefits would be calculated under both formulas and they would receive "the benefit under the previous plan formula if that formula yields a benefit greater than your Cash Balance amount."

29.     Regarding the opening balance for Morgan Plan participants, the SPD explained, "If you were a plan participant on December 31, 1998, and you were still employed on January 1, 1999, your opening balance under the Cash Balance Plan was determined by converting your accrued benefit under the prior benefit formula to its lump sum value using actuarial assumptions. This conversion method assures that you receive a starting value in the new plan which is 'actuarially equivalent' to the value of the benefit you had accrued under the prior benefit formula."

30.    The 1999 SPD also provided a chart illustrating "How your account grows," showing that an employee earning $75,000 and with an opening balance of $35,000 would have a benefit of $40,952.03 at the end of the year, using a six percent interest rate.

31.    In a separate section with the heading "Transition Benefit," the 1999 SPD stated, "To recognize the transition to the Cash Balance Plan, all employees who were earning benefits under the prior formula on December 31, 1998, and who terminate on or before December 31, 2003, are eligible for a transition benefit." The section continued in smaller type, "Under this provision, benefits will be calculated using two formulas – the prior formula and the Cash Balance Formula -- during the five-year period from January 1, 1999 through December 31, 2003. If you leave Morgan during this period and are vested, you will receive the larger of the two benefits."

32.    The 1999 SPD further described the "transition benefit" as follows: "After December 31, 2003, your accrued benefit under the prior formula will be frozen and will continue to act as a minimum benefit. When you leave Morgan, you will receive the larger of the minimum benefit or your balance under the Cash Balance Plan."

33.    Thus, the 1999 SPD described the methodology by which benefits under the Morgan Cash Balance Plan would be calculated, but did not describe wear-away and assured participants that comparison of the cash balance and final average pay formula results was a "transition benefit" – not an effective freeze on their pension accruals that could last for years. And it buried this information in a section that stated that it applied only to participants who terminated employment "on or before December 31, 2003" – that is, those who left while still accruing final average pay benefits.

34.    The 1999 SPD contained a section entitled, "Situations in which benefits could be

8

forfeited or delayed," but it did not explain that participants would accrue no additional benefits during wear-away.

35.     A new SPD effective September 18, 2000, replaced the 1999 SPD. The 2000 SPD contained the same promises of "a baseline of steadily growing assets," a plan that "builds your assets," the ability to "know the value of your benefit at any given time" and "watch your balance grow," that "Once you are vested, the value of your Cash Balance Plan is yours to keep," and that "Each month your account grows from two sources."

36.     The 2000 SPD contained the same assurance that opening balances were "'actuarially equivalent' to the value of the benefit that had accrued under the prior benefit formula" and the same chart showing "potential growth" of a $35,000 opening balance.

37.     Like the 1999 SPD, the 2000 SPD referred to a "transition benefit," stating, "If you were a plan participant on December 31, 1998, you are eligible for a transition benefit under the previous plan formula if that formula yields a benefit greater than your Cash Balance Amount."

38.     The 2000 SPD also described the "transition benefit" as applicable only to participants who "first terminate on or before December 31, 2003." It stated, "After December 31, 2003, your accrued benefit under the prior formula will be frozen and will continue to act as a minimum benefit" and "the amount of your benefit under the prior formula will be calculated using your service and final average earnings through December 31, 2003."

39.     Thus, like the 1999 SPD, the 2000 SPD explained the mechanics of calculating a benefit, but did not tell participants that the "transition benefit" could result in their pensions being effectively frozen for years due to wear-away, and did not include wear-away in its list of "Situations in which benefits could be forfeited or delayed."

9

40.     On December 31, 2000, Morgan merged into Chase Manhattan Bank, creating JPMC.

41.     The Morgan Cash Balance Plan merged into the Retirement Plan of The Chase Manhattan Bank and Certain Affiliated Companies effective December 31, 2001, creating the JPMC Plan.

42.     The JPMC Plan continues the wear-away effect of the Morgan Cash Balance Plan: that is, former Morgan Plan participants' benefits were frozen as of December 31, 2003, and they accrued no additional benefits until their cash balance benefits exceeded their final average pay benefits, if ever.

43.     JPMC issued a new SPD effective in 2005. Like the prior SPDs, the 2005 SPD unequivocally promised ongoing growth of the cash balance benefit, stating, that JPMC Plan accounts would "grow each month" with pay credits and interest credits.

44.     The 2005 SPD stated that each participant had "a notional recordkeeping cash balance account in your name to track the growth of your benefit. Your benefit grows each month through pay credits and interest credits made to this account."

45.     The 2005 SPD also reflected a change in the structure of "pay credits": where the Morgan Cash Balance Plan had provided for credits equal to 5% of salary, the JPMC Plan provided for pay credits of only 3% for participants with fewer than five years of service and 4% for participants with five to nine years of service, with 5% pay credits starting at ten years of service. However, the 2005 SPD assured participants that if they had been earning pay credits under a formula with a higher percentage, they would continue to earn credits at the higher percentage until they qualified for the same or a greater percentage under the JPMC Plan. In

10

other words, if the new formula was less favorable, participants would continue to earn benefits under the old formula.

46.    The 2005 SPD referred participants to "the appropriate Appendix" for information on "minimum benefits." However, the SPD stated that for participants originally hired by J. P. Morgan, the Appendices only applied to periods before December 31, 2004.

47.    Though Plaintiff continued to work for JPMC until March 24, 2019, his cash balance benefit never exceeded his final average pay benefit. As a result, unbeknownst to Plaintiff, he accrued no pension benefits during his last 15 years of employment with JPMC. He earned the same pension benefit by working until March 2019 as he would have if he had separated from employment on January 1, 2004.

48.    Plaintiff obtained the 1999, 2000, and 2005 SPDs when JPMC filed them in this case. Plaintiff did not previously receive these SPDs, or if he did receive th, he did not retain them.

49.    Plaintiff is informed and believes, and based thereon alleges, that the JPMC Plan Administrator never provided SPDs that described wear-away, and that any other SPDs provided between 2005 and 2019 similarly minimized and failed to explain clearly the effects of the "greater of" calculation, including that participants could work for years without earning any additional pension benefits.

50.    Beginning in 2002, the JPMC Plan Administrator provided annual pension benefit statements to JPMC Plan participants, including Plaintiff. To assist him in tracking what he mistakenly believed was the growth of his pension, Plaintiff retained copies of many of the statements he received.

51.    The statements showed only the participant's cash balance benefit, not the final

11

average pay benefit, even for participants in wear-away; that is, participants whose final average pay benefit exceeded their cash balance benefit. The statements showed the hypothetical account balance growing annually with the addition of pay credits and interest credits.

52.     The statements contained language designed to assure participants that their JPMC Plan benefits were increasing with continued employment, including the following:

- "Your JPMorgan Chase Retirement Plan benefit is expressed as a cash balance benefit that grows in a notional bookkeeping account over time through pay credits and interest credits";

- "[Y]our pension benefit is expressed as a cash balance benefit that grows through pay credits and interest credits";

- "[A] record keeping account is established in your name and grows every month through pay and interest credits while you are employed by JPMorgan Chase";

- "While you are an active employee, your account grows with monthly pay credits";

- "You receive one year of pay credit service for each year of service with JPMorgan Chase. You no longer earn pay credit service when your employment ends with JPMorgan Chase."

53.     None of the statements disclosed participants' frozen final average pay benefit amount, even if that amount exceeded the cash balance benefit.

54.     None of the statements informed participants that if their frozen final average pay benefit exceeded their cash balance benefit, they would receive the frozen benefit only and would not receive any cash balance benefit.

55.     None of the statements informed participants that if their frozen final average pay benefit exceeded their cash balance benefit, any "pay credits" and "interest credits" that they earned did not increase their actual benefits, but merely reduced the gap between the value of their cash balance benefit and the frozen final average pay benefit.

56.     Plaintiff terminated employment with JPMC on March 24, 2019, at age 53.

57.     As of January 1, 2020, JPMC froze the JPMC Plan by ceasing "pay credits" for compensation earned or service performed after December 31, 2019.

58.     After separating from employment, Plaintiff received a pension benefit election packet dated March 27, 2019. Under the heading "Information About Deferring Receipt of Your Benefit," the statement informed Plaintiff, "Your account balance continues to grow with monthly interest credits until you take a distribution from the Plan. . . . The longer an individual waits to request a distribution, the higher the account balance will be."

59.     Nothing in the election packet mentioned the frozen final average pay formula, explained that Plaintiff would receive his December 31, 2003 benefit if it exceeded the cash balance benefit, or explained that he would not receive both the cash balance benefits that he had been told he was accruing and his frozen final average pay benefit.

60.     The JPMC Plan Administrator continued to provide Plaintiff with annual pension benefit statements that showed his benefit increasing. His 2019 and 2020 statements said, "Your Pension Plan benefit is expressed as a cash balance benefit that grows in a notional bookkeeping account through interest credits." The statement assured Plaintiff that "[w]hile continuously employed by the firm your account grew with monthly pay credits . . . . Pay credits to your account ceased when your employment with JP Morgan Chase ended."

61.     Nothing in the post-employment statements informed Plaintiff that his benefit had

been frozen as of December 31, 2003 – that is, that his pension had been in wear-away since 2004.

62.     In addition to an annuity form of benefit, the JPMC Plan offers former Morgan Plan participants the option to elect distribution of the actuarial present value of their annuity benefit in a single sum.

63.     In 2021, Plaintiff requested a new pension election packet, then followed up with a request for more information about how his pension was calculated.

64.     JPMC sent Plaintiff calculation worksheets showing the 2019 and 2021 calculations.

65.     Plaintiff was stunned to learn from the calculation worksheets that he had accrued zero pension benefit since December 31, 2003.

66.     The worksheets showed that Plaintiff's pension would be based solely on his salary and years of service as of the end of 2003.

67.     Thus, from 2004 through 2019, while Plaintiff's salary increased substantially and his years of service doubled, his pension remained the same. Had Plaintiff separated from JPMC on January 1, 2004, his pension benefit in 2021 would have been exactly the same as it was after he worked an additional 15 years, other than the early retirement subsidy.

### CLASS ALLEGATIONS

68.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23(b)(1) and (2).

69.     The Class is defined as all former Morgan Plan participants who received pension benefit statements during wear-away that failed to disclose their frozen final average pay benefits

14

and failed to disclose that they would not receive the benefits that they were reported to have accrued in addition to their frozen accrued benefits.

70.    Plaintiff reserves the right to modify the definition of the proposed class based on information that they or their counsel learn through discovery.

71.    The proposed class meets all the requirements of Federal Rule of Civil Procedure 23, as follows.

72.    Upon information and belief, the Class is so numerous that joinder of all persons in the class is impracticable. Upon information and belief, Morgan had approximately 25,000 employees at the time of the merger with Chase in 2000. All of those who were participants in the Morgan Plan as of December 31, 1998, had final average pay benefits that were frozen as of the earlier of their separation from employment and December 31, 2003. Numerosity of the class will be ascertained and confirmed by discovery. The number and identity of the members of the class are readily determinable from the Defendants' records.

73.    There are common questions of law and fact affecting the rights of the members of the Class, including, without limitation:

          a.    Whether the JPMC Plan Administrator breached its fiduciary duties to former Morgan Plan participants in wear-away by falsely telling them that their pension benefits were increasing year-by-year via the addition of "pay credits" and "interest credits," when in fact their pension benefits were frozen;

          b.    Whether the JPMC Plan Administrator violated ERISA § 105(a), 29 U.S.C. § 1025(a), by failing to provide participants in active service with pension benefit statements showing their total benefits accrued;

15

c.   Whether the JPMC Plan Administrator violated ERISA § 102, 29 U.S.C. § 1022, by failing to furnish participants with an SPD that, *inter alia*, failed to reasonably apprise participants of their rights under the JPMC Plan and minimized the plan's limitations due to wear-away;

d.   Whether the JPMC Board breached its fiduciary duties to former Morgan Plan participants by failing to monitor the performance of the JPMC Plan Administrator with respect to its provision of pension benefit information and other plan communications;

e.   Whether Plaintiff and the Class are entitled to equitable relief for Defendants' violations of ERISA §§ 404(a), 102, and/or 105(a), and/or to statutory penalties for the JPMC Plan Administrator's violations of ERISA § 105(a).

74.   The claims of the named representative are typical of the claims of the proposed Class. Plaintiff and all members of the proposed Class sustained the same or similar injuries arising out of and caused by Defendants' common course of conduct in violation of ERISA. Plaintiff's claims are thereby representative of, and co-extensive with, the claims of the proposed Class members.

75.   The named representative will fairly and adequately protect the interests of the proposed Class. There are no conflicts between the interests of Plaintiff and the other members of the proposed Class. Plaintiff's counsel are experienced in ERISA and class action litigation.

76.   This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would

16

establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Specifically, separate actions by individual class members could produce varying adjudications as to, inter alia, whether the Plan should be reformed so as to provide to former Morgan Plan participants their accrued final average pay benefit plus "pay credits" and "interest credits" accrued after the cash balance conversion, whether the class members are entitled to recover equitable surcharge for the difference between their benefits with and without the addition of "pay credits" and "interest credits" after the cash balance conversion, and whether other equitable relief is available for Defendants' ERISA violations.

77.     This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate monetary, injunctive, and other equitable relief in favor of the Class. In particular, upon information and belief, the JPMC Plan Administrator provided pension benefit statements in the same misleading format to all JPMC Plan participants.

**FIRST CLAIM FOR RELIEF**
**Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a),**
**Against Defendant JPMC Plan Administrator**

78.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

79.     ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying

reasonable expenses of administering the plan. These duties include the duty to provide complete and accurate information regarding participants' benefits.

80.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to sue to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

81.    The JPMC Plan Administrator breached its fiduciary duties to Plaintiff and the Class members by acts and omissions including failing to disclose that their pension benefits were frozen and intentionally concealing the fact that they were not accruing additional pension benefits through their continued employment.

82.    Plaintiff and the Class members have been harmed by the JPMC Plan Administrator's breaches in that they received inaccurate information about their retirement benefits.

## SECOND CLAIM FOR RELIEF
### Claim for Violation of ERISA § 404(a), 29 U.S.C. § 1104(a), Against Defendant JPMC Board

83.    Plaintiff incorporates paragraphs 1 through 77 as though fully set forth herein.

84.    ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan. These duties include the duty to provide complete and accurate information regarding participants' benefits.

85.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief from a violation of ERISA.

86.    The JPMC Board breached its fiduciary duties to Plaintiff and the Class members by acts and omissions including failing to monitor the performance of the JPMC Plan

18

Administrator to ensure that it provided JPMC Plan participants with complete and accurate information about their pension benefits.

87. Plaintiff and the Class members have been harmed by the JPMC Board's breaches in that they received inaccurate information about their retirement benefits.

**THIRD CLAIM FOR RELIEF**
**Claim for Violation of ERISA § 105, 29 U.S.C. § 1025,**
**Against Defendant JPMC Plan Administrator**

88. Plaintiff incorporates paragraphs 1 through 77 as though fully set forth herein.

89. ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B), requires that a plan administrator furnish pension benefit statements to defined benefit plan participants. Specifically, a plan administrator must furnish a pension benefit statement at least once every three years to each participant with a nonforfeitable accrued benefit and who is employed by the employer maintaining the plan at the time the statement is to be furnished. A pension benefit statement must indicate, on the basis of the latest available information, the participant's total benefits accrued.

90. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief for a violation of ERISA.

91. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), authorizes a plan participant to bring a civil action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c).

92. ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A), provides in pertinent part that any administrator who fails to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a), with respect to a participant may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure, and the court may in its discretion order such other relief as it deems proper. For this purpose, each violation with respect

19

to any single participant shall be treated as a separate violation. 29 C.F.R. § 2575.502c-1

increases the penalty under ERISA § 502(c) to $110 per day.

93.    The JPMC Plan Administrator violated Section 105(a) by failing to provide

Plaintiff and the Class members with pension benefit statements which meet the requirements of

that section, in that the statements provided to Plaintiff and Class members did not state the

participants' total benefits accrued, which, during the wear-away period, were their final average

pay benefits.

94.    Plaintiff and the Class members have been harmed by the JPMC Plan

Administrator's breaches in that they received inaccurate information about their pension benefit

accruals. Specifically, the JPMC Plan Administrator provided statements that falsely indicated

that participants were earning increased benefits when they were not.

**FOURTH CLAIM FOR RELIEF**
**Claim for Violation of ERISA § 102, 29 U.S.C. § 1022,**
**Against Defendant JPMC Plan Administrator**

95.    Plaintiff incorporates paragraphs 1 through 77 as though fully set forth herein.

96.    ERISA § 102, 29 U.S.C. § 1022, requires that a plan administrator furnish an SPD

to plan participants and beneficiaries. The SPD must be written in a manner calculated to be

understood by the average plan participant, and must be sufficiently accurate and comprehensive

to reasonably apprise participants and beneficiaries of their rights and obligations under the plan.

An SPD must specifically set forth, *inter alia*, circumstances that may result in disqualification,

ineligibility, or denial or loss of benefits.

97.    29 C.F.R. § 2520.102-2(b) provides that an SPD must not have the effect of

misleading, misinforming, or failing to inform participants and beneficiaries. Descriptions of

exceptions, limitations, reductions, and other restrictions of plan benefits must not be minimized,

rendered obscure, or otherwise made to appear unimportant, and the advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations.

98.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a plan participant to file suit to obtain injunctive and other appropriate equitable relief for a violation of ERISA.

99.     The JPMC Plan Administrator violated Section 102 by failing to furnish Plaintiff and the Class Members with SPDs that met the requirements of Section 102 and the regulations under Section 102, in that the SPDs did not describe wear-away and misinformed participants that their pensions were growing when they were not.

100.     Plaintiff and the Class members have been harmed by the JPMC Plan Administrator's breaches in that they received inaccurate information about their pension benefit accruals. As a result, Plaintiffs and Class members reasonably believed that they were earning additional pension benefits through continued service to JPMC, when in fact their benefits were effectively frozen due to wearaway.

## PRAYER FOR RELIEF

101.     WHEREFORE, Plaintiff and the Class members pray that the court grant the following relief:

**As to the First Claim for Relief:**

102.     Certify this case as a class action and appoint Plaintiff's counsel as class counsel;

103.     Declare that Defendant JPMC Plan Administrator has breached its fiduciary duties to Plaintiff and the Class members;

104.     Surcharge Defendant JPMC Plan Administrator in the amount necessary to provide Plaintiff and Class members pension benefits not subject to wear-away;

21

105.    Reform the JPMC Plan, including Section 4.7, Appendix VI, and Appendix XI, to provide that participants with Morgan Plan final average pay benefits shall receive their Morgan Plan benefit accrued through December 31, 2003, plus their JPMC Plan cash balance benefit accrued after January 1, 2004;

106.    Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

107.    Provide such other equitable relief as the Court deems appropriate.

**As to the Second Claim for Relief:**

108.    Certify this case as a class action and appoint Plaintiff's counsel as class counsel;

109.    Declare that Defendant JPMC Board has breached its fiduciary duties to Plaintiff and the Class members;

110.    Surcharge Defendant JPMC Board in the amount necessary to provide Plaintiff and Class members pension benefits not subject to wear-away;

111.    Reform the JPMC Plan, including Section 4.7, Appendix VI, and Appendix XI, to provide that participants with Morgan Plan final average pay benefits shall receive their Morgan Plan benefit accrued through December 31, 2003, plus their JPMC Plan cash balance benefit accrued after January 1, 2004.

112.    Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

113.    Provide such other equitable relief as the Court deems appropriate.

**As to the Third Claim for Relief:**

114.    Certify this case as a class action and appoint Plaintiff's counsel as class counsel;

115.    Declare that Defendant JPMC Plan Administrator violated ERISA § 105(a), 29

22

U.S.C. § 1025(a), by failing to provide Plaintiff and Class members with pension benefit statements showing their total benefits accrued;

116.    Reform the JPMC Plan, including Section 4.7, Appendix VI, and Appendix XI, to provide that participants with Morgan Plan final average pay benefits shall receive their Morgan Plan benefit accrued through December 31, 2003, plus their JPMC Plan cash balance benefit accrued after January 1, 2004.

117.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such other equitable relief as the Court deems appropriate;

118.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the JPMC Plan Administrator personally liable to Plaintiff and to each of the Class members in the amount of $110 per day from the date of each separate failure to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a) through judgment;

119.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief as the Court deems proper;

120.    Award Plaintiff and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

121.    Provide such other relief as the Court deems equitable and just.

**As to the Fourth Claim for Relief:**

122.    Certify this case as a class action and appoint Plaintiff's counsel as class counsel;

123.    Declare that Defendant JPMC Plan Administrator violated ERISA § 102, 29 U.S.C. § 1022, by failing to provide Plaintiff and Class members with SPDs that were sufficient to reasonably apprise them of their benefits under the JPMC Plan;

124.    Reform the JPMC Plan, including Section 4.7, Appendix VI, and Appendix XI, to

23

provide that participants with Morgan Plan final average pay benefits shall receive their Morgan Plan benefit accrued through December 31, 2003, plus their JPMC Plan cash balance benefit accrued after January 1, 2004.

125.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), award such other equitable relief as the Court deems appropriate;

126.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), find the JPMC Plan Administrator personally liable to Plaintiff and to each of the Class members in the amount of $110 per day from the date of each separate failure to meet the requirements of ERISA § 105(a), 29 U.S.C. § 1025(a) through judgment;

127.    Pursuant to ERISA § 502(c), 29 U.S.C. § 502(c), order such other relief as the Court deems proper;

128.    Award Plaintiff and the Class members reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA  502(g), 29 U.S.C. § 1132(g); and

129.    Provide such other relief as the Court deems equitable and just.

DATED:       July 25, 2022                          RENAKER SCOTT LLP

                                                    By:    *s/ Teresa S. Renaker*

                                                    Teresa S. Renaker, *pro hac vice*
                                                    RENAKER SCOTT LLP
                                                    505 Montgomery Street, Suite 1125
                                                    San Francisco, CA 94111
                                                    Tel.: (415) 653-1733
                                                    Fax: (415) 727-5079
                                                    teresa@renakerscott.com

                                                    David S. Preminger
                                                    KELLER ROHRBACK L.L.P.
                                                    1140 Sixth Avenue, 9th Floor
                                                    New York, NY 10036
                                                    Tel.: (646) 380-6690
                                                    Fax: 646) 380-6692

24

dpreminger@kellerrohrback.com

Jeffrey Lewis, *pro hac vice*
KELLER ROHRBACK L.L.P.
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel.: (510) 463-3900
Fax: (510) 463-3901
jlewis@kellerrohrback.com

**Attorneys for Plaintiff**

25