**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH PESSIN, on behalf of himself and all others similarly situated,<br><br>                              Plaintiffs,<br><br>            v.<br><br>JPMORGAN CHASE US BENEFITS EXECUTIVE, as Plan Administrator of the JPMorgan Chase Retirement Plan, et al.,<br><br>                              Defendants. | Case No. 1:22-cv-02436-VSB |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................. 2

        A.      Mr. Pessin's Pension Benefit. ............................................................. 2

        B.      JPMC's False Pension Benefit Statements. ........................................ 4

        C.      Procedural History. ............................................................................. 4

III.    ARGUMENT ...................................................................................................... 5

        A.      JPMC's Post-Employment Communications to Mr. Pessin Do Not
                Cure Its Years of False Statements That Concealed Wear-Away
                From Its Employees. ........................................................................... 5

        B.      The Second Circuit Has Already Held That JPMC Can Be
                Penalized for Voluntarily Providing False Information. ..................... 7

        C.      JPMC's Release Agreement Does Not Bar Plaintiff's Claims. .......... 9

                1.      Defendants' Standing Arguments Ignore That the
                        Complaint Meets All Article III Requirements. ....................... 9

                2.      The Release Is Not Properly Before the Court Under Rule
                        12(b)(6) or on Summary Judgment. ...................................... 11

                3.      The Release Agreement Does Not Bar Plaintiff's Claims. .... 13

                        a.      The Release Was Not Knowing and Voluntary ......... 13

                        b.      Mr. Pessin's Claims Are Carved Out of the Release
                                Because They Arose *Well After* Execution of the
                                Release Agreement. ................................................. 14

                        c.      Mr. Pessin's Claims Are Carved Out of the Release
                                Because They Are Claims for Vested Benefits or
                                Benefits ................................................................... 15

                        d.      Plaintiff's Claims Are Not Covered by the Release
                                Because They Are Not Employment-Related. ........... 16

4.    Defendants' Remaining Arguments Relating to the
Covenants "Not to Sue" and "No-Class-Action" Go
Nowhere.............................................................................. 18

D.    Plaintiff's Claims Are Not Time-Barred.......................................... 19

1.    Plaintiff's § 502(c) Claim Is Timely Under New York's
Three-Year Statute of Limitations To the Extent It Seeks a
Penalty ............................................................................... 19

2.    Application of Pennsylvania Law Would Not Assist
JPMC's Argument. ................................................................ 22

3.    Plaintiff's Claim Is Timely Even If a One-Year Limitation
Applies Because the Discovery Rule Tolled Plaintiff's
Claim Until at Least April 2021............................................. 24

IV.    CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot v. Drs. Ridgik, Steinberg & Assocs., P.A.*,
  609 F. Supp. 1216 (D.N.J. 1985) ..............................................................21

*Allison v. L Brands, Inc.*,
  2021 WL 4224729 (S.D. Ohio Sept. 16, 2021) ............................................. 11, 17

*Amara v. CIGNA Corp.*,
  534 F. Supp. 2d 288 (D. Conn. 2008), *vacated and remanded*, 563 U.S. 421
  (2011), *aff'd*, 775 F.3d 510 (2014)...................................................... 12, 13, 16

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014) ..............................................................3, 7

*Aulenback, Inc. v. Federal Highway Admin.*,
  103 F.3d 156 (D.C. Cir. 1997) ..............................................................11

*Bilello v. JPMorgan Chase Retirement Plan*,
  592 F. Supp. 2d 654 (S.D.N.Y. 2009) .................................................. 15, 16, 24

*Bormann v. AT&T Commc'ns, Inc.*,
  875 F.2d 399 (2d Cir. 1989) ..............................................................15

*Brown v. Rawlings Fin. Servs., LLC*,
  868 F.3d 126 (2d Cir. 2017) .......................................................... 8, 20, 21

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
  572 F.3d 76 (2d Cir. 2009) ..............................................................20

*Carter v. HealthPort Tech.*,
  822 F.3d 47 (2d Cir. 2016) ..............................................................9

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ..............................................................12

*Cigna Corp. v. Amara*,
  563 U.S. 421 (2011) ..............................................................22

*Clowes v. Pulver*,
  258 A.D.2d 50, 691 N.Y.S.2d 649 (1999)...........................................................21

*In re Commodity Exchange, Inc.*,
  213 F. Supp. 3d 631 (S.D.N.Y. 2016) ..............................................................10

*Cooper v. Ruane Cunniff & Goldfarb*,
    990 F.3d 173 (2d Cir. 2021) .............................................17

*Corwin v. NYS Bike Share*,
    2017 WL 1318010 (S.D.N.Y. Apr. 7, 2017) .........................12

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .........................................................11

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) .........................................................11

*DePace v. Matsushita Elec. Corp. of Am.*,
    257 F. Supp. 2d 543 (E.D.N.Y. 2003).................................13

*E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*,
    111 A.3d 220 (Pa. Commw. Ct. 2015)................................23

*East Midtown Plaza Hous. Co. v. Gamble*,
    60 Misc. 3d 9, 78 N.Y.S.3d 621 (N.Y. App. Term 2018) .....21

*Ellis v. Liberty Life Assurance Company of Boston*,
    958 F.3d 1271 (10th Cir. 2020).........................................20

*Faber v. Metropolitan Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ...............................................10

*Finz v. Schlesinger*,
    957 F.2d 78 (2d Cir. 1992) ...............................................15

*Fischer v. United States*,
    144 S. Ct. 2176 (2024) .....................................................19

*Guadagno v. Wallack Ader Levinthan Assoc.*,
    932 F. Supp. 94 (S.D.N.Y. 1996).......................................11

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007) .............................................24

*Hill v. Est. of Hill*,
    594 F. Supp. 3d 741 (N.D. Tex. 2022) .................. 10, 11, 14

*Howell v. Motorolla*,
    633 F.3d 552 (7th Cir. 2011) .............................................16

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ...........................................................2

*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*,
    37 N.Y.3d 552, 183 N.E.3d 443 (2021) ...........................................................................21

*Kaufman v. Cohen*,
    307 A.D.2d 113, 760 N.Y.S. 2d 157 (2003) ......................................................................22

*Kowalchyn v. Lewis*,
    2018 WL 2081858 (S.D.N.Y. March 28, 2018) ..........................................................20, 22

*Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*,
    935 F.2d 1360 (2d Cir. 1991)........................................................................................ 13, 14

*Laramee v. Jewish Guild for the Blind*,
    72 F. Supp. 2d 357 (S.D.N.Y. 1999)................................................................................14

*Levin v. Credit Suisse, Inc.*,
    2013 WL 1296312 (S.D.N.Y. Mar. 19, 2013), aff'd, 577 Fed. Appx. 85 (2d
    Cir. 2014)........................................................................................................................8, 20

*Liu v. Securities & Exchange Comm'n*,
    591 U.S. 71 (2020)...........................................................................................................22

*Lugo v. City of Troy*,
    114 F.4th 80 (2d Cir. 2024) .............................................................................................11

*Masten v. Metro. Life Ins. Co.*,
    2024 WL 4350909 (S.D.N.Y. Sept. 20, 2024)..................................................................16

*McFarlane v. First Unum Life Ins. Co.*,
    274 F. Supp. 3d 150 (S.D.N.Y. 2017) ..............................................................................10

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) .............................................................................................12

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) .........................................................................................................22

*Nachman Corp. v. Pension Benefit Guar. Corp.*,
    446 U.S. 359 (1980) ...........................................................................................................2

*New York State Ass'n of Plumbing–Heating–Cooling Contrs. v. Egan*,
    65 N.Y.2d 793, 493 N.Y.S.2d 112, 482 N.E.2d 908 (1985)...............................................21

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)......................................................................11

*Pension Benefit Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) ...........................................................................................................2

*Pessin v. JPMorgan Chase US Ben. Exec.*,
   112 F.4th 129 (2d Cir. 2024) ...........................................................................*passim*

*Romero v. Allstate Corp.*,
   404 F.3d 212 (3d Cir. 2005) .............................................................................23

*Rosenbaum v. Davis Iron Works*,
   871 F.2d 1088 (6th Cir. Apr. 19, 1989) (unpublished) ........................................18

*Russell v. Harman Intern. Indus., Inc.*,
   945 F. Supp. 2d 68 (D.D.C. 2013), *aff'd on other grounds*, 773 F.3d 253 (D.C.
   Cir. 2014) ......................................................................................................15

*Sharkey v. Ultramar Energy Ltd.*,
   70 F.3d 226 (2d Cir. 1995) ......................................................................... 12, 13

*Simel v. JP Morgan Chase*,
   2007 WL 809689 (S.D.N.Y. Mar. 19, 2007) .....................................................15

*Smith v. JPMorgan Chase*,
   2016 WL 5339548 (S.D.N.Y. Sept. 23, 2016) ...................................................14

*Stanley v. George Washington Univ.*,
   394 F. Supp. 3d 97 (D.D.C. 2019) ................................................... 10, 11, 14, 16

*Stone v. Travelers Corp.*,
   58 F.3d 434 (9th Cir. 1995) ............................................................................21

*Sullivan v. Stanadyne Corp.*,
   2015 WL 3674751 (D. Conn. June 12, 2015) ...................................................14

*In re SunTrust Banks, Inc. ERISA Litig.*,
   2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) ...................................................16

*Thole v. U.S. Bank*,
   590 U.S. 538 (2020) .......................................................................................11

*Tracey v. Heublein, Inc.*,
   772 F. Supp. 726 (D. Conn. 1991) ...............................................................8, 20

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
   131 F. Supp. 3d 103 (S.D.N.Y. 2015) ..............................................................11

*In re UBS ERISA Lit.*,
   2024 WL 4812387 (S.D.N.Y. Sept. 29, 2014) ...................................................11

*United States v. Williams*,
   553 U.S. 285 (2008) .......................................................................................19

*Valentino v. Cont'l Cas. Co.*,
  2000 WL 33341979 (W.D. Pa. June 29, 2000)........................................................22

*Wang Labs., Inc. v. Kagan*,
  990 F.2d 1126 (9th Cir. 1993) ..............................................................................20

*Watson v. Consol. Edison of N.Y.*,
  594 F. Supp. 2d 399 (S.D.N.Y. 2009) ....................................................................10

*Williamson v. Travelport, LP*,
  953 F.3d 1278 (11th Cir. 2020)..........................................................................8, 20

*Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust*,
  2002 WL 1300256 (S.D.N.Y. June 11, 2002) ......................................................14

**Statutes**

42 Pa. Cons. Stat. § 5524(5) .......................................................................22, 23

42 Pa. Cons. Stat. §5527(b) .................................................................................23

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq.............................1

ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) ....................................................8, 10

ERISA § 105, 29 U.S.C. § 1025(a)..............................................................6, 23, 25

ERISA § 105(a), 29 U.S.C. § 1025(a)...............................................................*passim*

ERISA § 105(a)(1)(B)(i), 29 U.S.C. § 1025(a)(1)(B)(i) ...........................................6

ERISA § 204(g), 29 U.S.C. § 1054(g) ...................................................................3

ERISA § 410(a), 29 U.S.C. § 1110(a) .................................................................18

ERISA § 413, 29 U.S.C. § 1113 ..........................................................................20

ERISA § 502, 29 U.S.C. § 1132 ..........................................................................19

ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) ................................................8

ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ..............................................16

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)........................................................17

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)................................................8, 10, 22

ERISA § 502(c), 29 U.S.C. § 1132(c).............................................................*passim*

ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1) ..................................................................23

ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A) ..........................................8, 9, 21

ERISA § 502(c)(1)(A), 29 U.S.C. § 1132(c)(1)(A) ................................................9

ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B) ..........................................8, 9

**Rules**

Fed. R. Civ. P. 12(b)(1) .....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .................................................................. 1, 11, 13, 18

Fed. R. Civ. P. 56(d) .........................................................................................12

N.Y. C.P.L.R. 213(1) .........................................................................................22

N.Y. C.P.L.R. 214(2) ..................................................................................20, 22

N.Y. C.P.L.R. 215(4) .........................................................................................21

N.Y. C.P.L.R. § 215(4) ..............................................................................19, 20, 21

**Regulations**

29 C.F.R. § 2509.75-8, D-3 ...............................................................................18

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) .............................................................19

## I.   INTRODUCTION

On remand, Defendants again seek to escape liability for their violations of ERISA,[1] but their arguments contravene the Second Circuit's opinion in this case and other controlling law. The court of appeals held that Mr. Pessin's complaint states a claim for violations of ERISA § 105(a), 29 U.S.C. § 1025(a), which requires that a plan administrator provide pension plan participants with statements of their accrued pension benefits, as well as a derivative claim against the JPMorgan Chase Board for failing to monitor the performance of its appointed plan administrator. *Pessin v. JPMorgan Chase US Ben. Exec.*, 112 F.4th 129, 144 (2d Cir. 2024).[2]

JPMC does not dispute that it provided Mr. Pessin with annual pension benefit statements through 2020 that told him he had a growing pension benefit when in fact JPMC had frozen his benefit as of the end of 2003. Instead, JPMC first points to a release that it had Mr. Pessin sign when he left employment in 2019, two years *before* he first learned of the pension freeze and *before* it issued him additional false statements for 2019 and 2020. JPMC's release argument fails for multiple reasons, including that the release is not properly before the Court on a Rule 12(b)(6) motion or summary judgment; there are substantial questions of fact under either Rule 12(b)(1) or 12(b)(6) as to whether the release was knowing and voluntary; the claims are carved out of the release because they arise well after its execution and relate to vested benefits; and the claims are not employment-related as the Second Circuit has recently interpreted that term.

Second, JPMC asserts that a statute of limitations bars Mr. Pessin's claim for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c), which provides for statutory penalties and equitable relief. But this argument too is riddled with fatal defects. In ERISA cases, courts apply the most analogous statute of limitations of the forum state, unless the subject benefit plan

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002 et seq.
[2] The Plan Administrator and Board are referred to collectively herein as "JPMC."

contains a choice-of-law provision. Here, New York is both the forum and the Plan's choice. As a court of this District has held, a three-year New York limitations period applies to a claim for statutory penalties. And New York's statute of limitations for a claim for equitable relief is six years. Because Mr. Pessin filed suit less than a year after he finally learned that JPMC's pension benefit statements were false, his claim is timely.

Accordingly, JPMC's renewed motion to dismiss should be denied.

## II.    STATEMENT OF FACTS

### A.    Mr. Pessin's Pension Benefit.

In 1987, Mr. Pessin went to work for J.P. Morgan & Co. ("Morgan"). ¶ 12.[3] As a Morgan employee, Mr. Pessin became a participant in Morgan's retirement plan ("Morgan Plan"). ¶¶ 6, 12, 13. The Morgan Plan was a traditional defined benefit pension plan, meaning that it paid a benefit commencing at retirement that was calculated based on factors including the participant's age and years of service.[4] ¶ 14. The Morgan Plan's benefit formula is referred to as a "final average pay" ("FAP") formula. *Id.*

Effective December 31, 1998, Morgan converted the Morgan Plan to a cash balance formula ("Morgan Cash Balance Plan"). ¶ 17. The Morgan Cash Balance Plan remained a defined benefit plan but switched to expressing participants' benefits as "account balances" that earned hypothetical "pay credits"—a percentage of the participant's compensation—plus hypothetical "interest credits." ¶¶ 18, 19. The Morgan Cash Balance Plan provided that

---

[3] All references to "¶" are to the paragraphs of the Amended Complaint (Dkt No. 30).

[4] A defined benefit plan is so called because it "promises to pay employees, upon retirement, a fixed benefit under a formula that takes into account factors such as final salary and years of service with the employer." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 637 n.1 (1990) (citing 29 U.S.C. § 1321). Thus, each participant, "upon retirement, is entitled to a fixed periodic payment." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (citation omitted). In a defined benefit plan, "the benefits to be received by employees are fixed and the employer's contribution is adjusted to whatever level is necessary to provide those benefits." *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 363 n.5 (1980) (citation omitted).

participants like Mr. Pessin, who previously accrued benefits under the Morgan Plan, would continue to accrue benefits under the prior plan formula through December 30, 2003. ¶¶ 20-22.

The conversion of Morgan Plan benefits to a Morgan Cash Balance Plan opening balance implicated ERISA's "anti-cutback" rule, which invalidates any pension plan amendment that reduces participants' accrued benefits. ¶ 23; see ERISA § 204(g), 29 U.S.C. § 1054(g). Accordingly, the Morgan Cash Balance Plan stipulated that a Morgan Plan participant's benefit would not be less than their accrued benefit as of December 30, 2003. ¶ 24. Thus, the FAP benefit became a frozen amount that would remain as the participant's pension benefit until the cash balance account exceeded it, which, in Mr. Pessin's case, never happened.

This method of providing participants with the greater of their FAP or cash balance benefits implicated the phenomenon known as "wear-away." ¶¶ 25-26. See *Pessin*, 112 F.4th at 133-34. "Wear-away" refers to "the period when 'any pay and interest credits earned by a participant would not increase his or her actual benefits, but merely reduce the gap between the value of the participant's cash balance account and the participant's old benefits.'" *Pessin*, 112 F.4th at 134 n.3 (quoting *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 203 (2d Cir. 2017)). During wear-away, "an employee continues to work at a company but does not receive additional benefits for those additional years of service." *Amara v. CIGNA Corp.*, 775 F.3d 510, 516 (2d Cir. 2014). Thus, following the cash balance conversion, "former Morgan Plan participants accrued no new benefits until their cash balance caught up to and surpassed their December 31, 2003, accrued benefit under the final average pay formula." *Pessin*, 112 F.4th at 133-134.

After Morgan merged into Chase Manhattan Bank in 2000, creating JPMorgan Chase, the Morgan Cash Balance Plan merged into the JPMC Plan ("Plan"). ¶¶ 40-42. "The JPMC Plan continued the wear-away effect of the [Morgan] Cash Balance Plan, because former Morgan

Plan participants still accrued no additional benefits until their cash balance benefits exceeded, if ever, their accrued benefits under the final average pay formula." *Pessin*, 112 F.4th at 134.

Mr. Pessin terminated his employment with JPMC in 2019, with more than 31 years of service. ¶¶ 12, 56. In 2021, he learned for the first time that, due to wear-away, his monthly pension benefit had not increased since December 31, 2003. ¶¶ 63-66.

**B.      JPMC's False Pension Benefit Statements.**

Beginning in 2002, JPMC provided annual pension benefit statements to Plan participants, including Plaintiff. ¶ 50. The statements showed only the participant's cash balance benefit, not the FAP benefit, even for participants who were entitled only to the FAP benefit. ¶¶ 51, 53-55. Thus, for participants in wear-away, like Plaintiff, the benefit statements omitted the amount of their actual pension benefit, the frozen FAP benefit. *Id.* Moreover, the statements assured participants that their Plan benefits were increasing when, for participants in wear-away, they were not. ¶ 52. Even after Mr. Pessin terminated employment in 2019, JPMC continued to send him annual statements that reported only his cash balance benefit and showed that his pension was growing with "interest credits," which was not true. ¶ 60.

Because JPMC falsely told him every year that his pension was growing, Mr. Pessin worked for JPMC for over 15 years without realizing that, unlike during his first 16 years of employment, he was earning no additional pension benefit through continued employment. ¶ 47. As the Second Circuit put it, the statements led Mr. Pessin "to incorrectly believe his pension benefits were growing when they were not." *Pessin*, 112 F.4th at 142.

**C.      Procedural History.**

Mr. Pessin filed his original complaint in March 2022 and his amended complaint in July 2022. Dkt. Nos. 1, 30. In December 2022, this Court dismissed the amended complaint, holding that it failed to plausibly allege any ERISA violation. Dkt. No. 40.

Mr. Pessin appealed, and the Second Circuit reversed this Court's decision with respect to (1) Mr. Pessin's claim against the Plan Administrator for violation of ERISA's requirement to provide pension benefit statements, § 105(a), and (2) Mr. Pessin's claim against the JPMC Board for failure to monitor the Plan Administrator's performance to ensure that it provided participants with complete and accurate information about their pension benefits (Counts II and III). *Pessin*, 112 F.4th at 144. The Second Circuit explained that the complaint plausibly alleges that the statements Mr. Pessin received failed to provide him with his "total benefits accrued," as required by § 105(a), because they showed his benefit accrued under the cash balance formula when the frozen FAP benefit was in fact the amount he was entitled to. *Id*. at 141. The court held that even if JPMC provided more statements than § 105(a) required, the statute still mandated that each be accurate: "In short, the JPMC Benefits Executive may not have been under a duty to provide Pessin with a Benefit Statement, but once it did so, it was obligated to provide a Benefit Statement that accurately reflected his total benefits accrued." *Id*. at 142-43.

## III.    ARGUMENT

### A.    JPMC's Post-Employment Communications to Mr. Pessin Do Not Cure Its Years of False Statements That Concealed Wear-Away From Its Employees.

The Second Circuit held that providing pension benefit statements triggers the disclosure requirements of § 105(a), even if the plan administrator elects to provide more statements than the statute requires. *Pessin*, 112 F.4th at 142. Mr. Pessin has plausibly alleged that JPMC provided him with an inaccurate benefit statement every year through 2020. *Id*. at 144. Making alternative sources of information available does not cure defects in a pension statement. *Id*. at 142-143. "[T]he language of § 105(a) is clear. The Benefit Statements provided to Pessin were required to contain Pessin's 'total benefits accrued' and yet they did not." *Id*. at 143.

Disregarding the Second Circuit's analysis, JPMC says that if it gave Mr. Pessin an

accurate figure as part of a pension election packet distributed to him *after he terminated employment in March 2019*, that excuses its false pension benefit statements from 2016 forward, because § 105(a) only requires that a plan administrator provide a statement every three years. See 29 U.S.C. § 1025(a)(1)(B)(i). JPMC's argument cannot be reconciled with the Second Circuit's holding, both because the pension election packet cannot serve as an alternative information source to satisfy § 105 and, as explained above, because JPMC elected to provide statements every year from 2016 forward that did not show Mr. Pessin's total benefits accrued.

On its face, the 2019 document is not a pension benefit statement; it is a 17-page document consisting of a letter and various forms, none of which is a pension benefit statement. Dkt. No. 59-3. Nothing in the packet tells Mr. Pessin that it supersedes his annual pension benefit statements. Instead, the 2019 document emphasizes the same false information that duped Mr. Pessin for years while he was a JPMC employee. Encouraging participants to defer commencing their pensions, the document specifies, "Your account balance continues to grow with monthly interest credits until you take a distribution from the Plan." *Id.* at 3. The document provides additional interest rate information and a chart purporting to demonstrate that "the longer an individual waits to request a distribution, the higher the account balance will be." *Id*. It also specifies "interest rates impact the conversion of your account balance into an annuity benefit under the Plan." *Id.* None of this information was true for Mr. Pessin: no monthly interest credits would be added to his benefit; he would not receive an "account balance"; and there would be no conversion of an account balance into an annuity benefit—rather, the annuity benefit was the result of the final average pay calculation. Renaker Decl., Exh. A, App. XI, § 11.2.[5]

---

[5] Indeed, this advice was affirmatively bad for Mr. Pessin. JPMC did not tell him that, despite working under the cash balance formula for 15 years, he would be receiving his FAP benefit, with the associated early retirement eligibility. Dkt. No. 30, ¶ 15; Renaker Decl., Exh. A, App. XI, § 11.3. Under the JPMC Plan, normal retirement age is 65, and participants can qualify for unreduced early retirement at age 55. *Id.* Unreduced early retirement

JPMC implies Mr. Pessin should have compared the pension election packet with his annual statements and deduced that the pension election information was partially accurate while the previous 15 annual statements—plus the subsequent statements for 2019 and 2020—were entirely false. But it would have been more reasonable for Mr. Pessin to conclude that the discrepancy between the account balance on the statements and the lump sum in the packet resulted from applying favorable interest rates in converting the account balance to an annuity— the inapplicable process that the pension benefit election forms explained—than to assume that the plan administrator had been sending him false information for 15 years. Moreover, JPMC's argument rests on the trail-of-breadcrumbs disclosure that the Second Circuit rejected. *Pessin*, 112 F.4th at 142-43. The court agreed with JPMC that Mr. Pessin "had several opportunities to learn more about his specific benefit package and receive additional information." *Id.* at 139. But those "opportunities" did not meet § 105(a)'s requirements. *Id.* at 143. Nor does the "opportunity" to infer the truth from the belated pension election packet.

Finally, JPMC focuses only on information it provided to Mr. Pessin when it was too late for him to act on it by protesting the freeze on his pension, demanding a higher salary to offset the freeze, or leaving for another employer that offered ongoing pension accruals. See *Amara*, 775 F.3d at 530. By focusing on information it issued after Mr. Pessin retired, JPMC underscores that its annual benefit statements were wrong before then with detrimental effects.

**B.    The Second Circuit Has Already Held That JPMC Can Be Penalized for Voluntarily Providing False Information.**

The Second Circuit held that Defendants can be penalized "for providing more

---

means that a participant can commence receiving his full age 65 monthly benefit ten years early. *Id.* Thus, for participants who have terminated employment, every month past the age of unreduced early retirement eligibility in which they do not commence their benefit is a month in which they have left their full age 65 benefit on the table. Born in 1965 (Dkt. 59-5 at 12), Mr. Pessin achieved eligibility for unreduced early retirement in 2020 but did not immediately commence his pension, a financially disadvantageous decision that directly resulted from JPMC's misinformation.

information than is strictly required" by § 105(a), when that information is inaccurate. *Pessin*, 112 F.4th at 142. Ignoring this holding, JPMC argues this Court should "strictly and narrowly construe" § 105(a), various other ERISA provisions, and even state law based on cases applying ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B). But JPMC's arguments are misplaced. To start, Mr. Pessin's third cause of action arises under two subdivisions of ERISA's civil enforcement provision: § 502(a)(3), which authorizes a claim for equitable relief from a violation of any provision of ERISA Title I, including § 105(a); and § 502(a)(1)(A), which authorizes a claim for the relief provided in § 502(c), including penalties and equitable relief. 29 U.S.C. § 1132(a)(1)(A), (a)(3), (c).

In a footnote, JPMC proposes the last of these sections, § 502(c), must be "strictly and narrowly construed." (Dkt. No. 58 at 8 n.2.) But nowhere in its brief does JPMC ask the Court to construe any language in § 502(c). Therefore, none of the cases JPMC cites are germane.

For example, in *Williamson v. Travelport, LP*, 953 F.3d 1278 (11th Cir. 2020), the court construed § 502(c)(1)(B)'s reference to "information which such administrator is required by this subchapter to furnish," concluding it was limited to documents specifically enumerated in ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). *Id.* at 1294; see *Tracey v. Heublein, Inc.*, 772 F. Supp. 726, 728 (D. Conn. 1991) (holding that to trigger penalties under § 502(c)(1)(B), "request for information" must be made in writing); see also *Brown v. Rawlings Fin. Servs., LLC*, 868 F.3d 126, 128-130 (2d Cir. 2017) (selecting Connecticut statute of limitations for § 502(c) claim for penalties). And in *Levin v. Credit Suisse, Inc.*, 2013 WL 1296312 (S.D.N.Y. Mar. 19, 2013), aff'd, 577 Fed. Appx. 85 (2d Cir. 2014), the court "decline[d] to extend the reach of § 1132(c)(1)(B)" beyond a failure to mail requested information. *Id.* at *19.

JPMC fails to acknowledge that Mr. Pessin's claim arises under § 502(c)(1)(A), not §

502(c)(1)(B), the provisions interpreted in the cases it cites. Section 502(c)(1)(A) authorizes a penalty for any failure by a plan administrator "to meet the requirements of" § 105(a). 29 U.S.C. § 1132(c)(1)(A) (citing ERISA § 105(a), 29 U.S.C. § 1025(a)). Unlike § 502(c)(1)(B), § 502(c)(1)(A) does not require the Court to construe terms like "request" and "information" because it specifically targets § 105(a) violations, which the Second Circuit held that Mr. Pessin sufficiently alleges. *Pessin*, 112 F.4th at 144. Accordingly, no strict or narrow construction is required, or allowed, on JPMC's motion.

**C.    JPMC's Release Agreement Does Not Bar Plaintiff's Claims.**

JPMC argues that that Mr. Pessin lacks Article III standing to bring his claims because of the Release he executed when leaving employment. As discussed below, JPMC's arguments fail. First, Defendants' standing argument is irrelevant to this Court's jurisdiction under Rule 12(b)(1) in view of the allegations of the Amended Complaint. Second, Defendants' Release-based argument is not properly before the Court because the Release is not incorporated or referenced in Plaintiff's complaint. Third, even if the Court considers the Release, it does not bar Plaintiff's claims because the release was not knowing and voluntary, Plaintiff's claims arose well after the Release was executed, they are claims for vested benefits, and they are not employment-related claims. Fourth, Defendants' remaining arguments relating to the Release covenants "to-not-sue" and "no-class-actions" go nowhere, whether analyzed under Rule 12(b)(1) or 12(b)(6).

**1.    Defendants' Standing Arguments Ignore That the Complaint Meets All Article III Requirements.**

To demonstrate Article III standing, a plaintiff must show (1) injury in fact, (2) a causal connection between the injury and defendant's conduct, and (3) a likelihood that the injury is redressable. *Carter v. HealthPort Tech.*, 822 F.3d 47, 55 (2d Cir. 2016). Here, the Amended Complaint alleges (1) injury in fact, *see, e.g.,* ¶ 2 ("For the last 15 years of his employment, he

9

earned no benefit under the JPMC Plan, his benefit having been effectively frozen as of December 31, 2003."); (2) causal connection, *see, e.g.*, ¶ 3 (JPMC "did not disclose wear-away"); and (3) redressability, *see, e.g.*, ¶ 116 ("reform the JPMC Plan"), ¶ 118 ("find the JPMC Plan Administrator personally liable to Plaintiffs and each of the Class members [for violation of] ERISA § 105(a)"). Based on these allegations, Plaintiff has standing. *See In re Commodity Exchange, Inc.*, 213 F. Supp. 3d 631, 650 (S.D.N.Y. 2016) (noting in analyzing standing courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).[6]

JPMC argues that Mr. Pessin lacks Article III standing based on provisions in the Release Agreement. But JPMC's entire standing argument relies on one out-of-Circuit district court case—*Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97 (D.D.C. 2019). Dkt No. 58 at 10, 12. That case is readily distinguishable. The release in *Stanley* arose out of a prior litigation settlement and was markedly broad. The *Stanley* release stated: "[I]t is expressly understood that this is a GENERAL RELEASE, and is intended to release claims to the fullest extent permitted by law." *Id.* at 104. The release provided that the plaintiff "forever releases…the [defendant]…from any and all claims…of any nature whatsoever." *Id.* Thus, unlike the present case, the *Stanley* release was not limited to claims arising out of or related to the Plaintiff's employment. *See* Dkt No. 59-1 at 2 ("relating to my employment with the Company").[7] In other

---

[6] *See also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 102 (2d Cir. 2011) (affirming dismissal on other grounds) (explaining that beneficiaries of an employee welfare benefit plan could establish constitutional standing without demonstrating actual harm in an action seeking injunctive relief requiring a fiduciary to satisfy its fiduciary responsibilities); *Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 407 (S.D.N.Y. 2009) (holding plaintiff had standing where they alleged defendant made false and misleading representations about plan options in breach of fiduciary duties under ERISA and holding injunctive relief under §502(a)(3) satisfies redressability); *McFarlane v. First Unum Life Ins. Co.*, 274 F. Supp. 3d 150, 161 (S.D.N.Y. 2017) (holding failure to obtain information required under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) is an injury in fact).

[7] Similarly, *Hill v. Est. of Hill*, 594 F. Supp. 3d 741 (N.D. Tex. 2022), is inapt. *Hill*, a non-ERISA case, concerns protracted litigation by a grandson over his grandfather's trusts. The *Hill* court found dispositive a "Waiver of Standing Clause" in the broad Global Settlement and Mutual Release Agreement signed by the grandson, *id.* at

words, the release that Mr. Pessin signed does not include the *Stanley* general release language and is unequivocally narrower in scope because it relates only to claims concerning his employment. *See Allison v. L Brands, Inc.*, 2021 WL 4224729, *11-12 (S.D. Ohio Sept. 16, 2021) (distinguishing *Stanley* on same grounds and rejecting same defense argument as that made here); see also subsection 3 below.[8] Given the broader language of the plaintiff's release in *Stanley*, that case is not helpful to JPMC's standing argument.[9]

## 2. The Release Is Not Properly Before the Court Under Rule 12(b)(6) or on Summary Judgment.

Realizing it may lose its standing argument, JPMC requests that "all the arguments relating to the Release Agreement" be considered under Rule 12(b)(6) or converted to a motion for summary judgment should the Court not rule in its favor under Rule 12(b)(1). Dkt No. 58 at 12 n.4. Neither is appropriate given the current posture of the case.

The Court cannot consider the Release on a Rule 12(b)(6) motion because the Release is not attached to or incorporated by reference into the complaint, and Plaintiff did not rely on it in

---

760-61, a provision not present in the narrower release here. Moreover, the court found the *Hill* plaintiff lacked standing "because he released these claims in open court as part of the settlement…The court and counsel for [Plaintiff] specifically confirmed on the record…that claims were released and would be dismissed with prejudice," *id*. at 761-63, which did not occur here.

[8] Additionally, the D.C. Circuit case relied on in *Stanley* does not support that court's broad statement; rather, the circuit court deemed petitions challenging regulatory orders to be moot because the petitioners had entered into consent agreements conditionally rescinding the orders. *Aulenback, Inc. v. Federal Highway Admin.*, 103 F.3d 156, 158 (D.C. Cir. 1997). Here, Mr. Pessin has not settled any claim; he merely signed a contract of adhesion offered to him by JPMC. Whether JPMC succeeded in obtaining an advance waiver of the claims in this case is not a jurisdictional question but a question of the merits of JPMC's potential affirmative defense.

[9] The remaining cases cited by JPMC on pp. 8-10 (Dkt. 58) either stand for propositions with which Plaintiff does not disagree and/or concern materially different facts, with no release analyzed. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) (importance of Article III standing requirement); *Thole v. U.S. Bank*, 590 U.S. 538 (2020) (Article III applies to ERISA); *Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008) (plaintiff bears burden of subject matter jurisdiction); *Guadagno v. Wallack Ader Levinthan Assoc.*, 932 F. Supp. 94 (S.D.N.Y. 1996) (same); *Lugo v. City of Troy*, 114 F.4th 80 (2d Cir. 2024) (challenge to Article III under Rule 12(b)(1) can include evidence beyond pleading); and *see Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103 (S.D.N.Y. 2015) (concerning Madoff ponzi investment scheme, court held no injury in fact because plaintiff had no right to fictitious profits and because its gains exceeded the fees; no release analyzed); *In re UBS ERISA Lit.*, 2024 WL 4812387 (S.D.N.Y. Sept. 29, 2014) (concerning losses incurred by funds in which plaintiff did not invest, no release analyzed); *Patterson v. Morgan Stanley*, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) (same).

drafting the complaint.[10] A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). And "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153 (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Here, the complaint does not refer to, attach, or rely on the release. Accordingly, JPMC's release defense is inappropriate to resolve on a motion to dismiss where this court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff. *See Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298 (2d Cir. 2022).

JPMC's request that the Court convert its motion to one for summary judgment also fails. The Court should decline the request because JPMC has not met its burden of proof, as explained below, or if it grants the request, should defer considering the motion because Plaintiff requires discovery to present facts essential to his opposition. *See* Fed. R. Civ. P. 56(d); Renaker Decl., ¶¶ 4-7. JPMC bears the burden of proving that the waiver was "an intentional relinquishment or abandonment of a known right or privilege." *Amara v. CIGNA Corp.*, 534 F. Supp. 2d 288 (D. Conn. 2008), *vacated and remanded*, 563 U.S. 421 (2011), *aff'd*, 775 F.3d 510 (2014) (internal quotation marks omitted). "The essential question is whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as knowing and voluntary." *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995) (internal quotation marks omitted). A non-exhaustive list of factors considered in this analysis includes the plaintiff's role in deciding

---

[10] The existence of a release is an affirmative defense, not an element of the plaintiff's claim. *See, e.g., Corwin v. NYS Bike Share*, 2017 WL 1318010, at *9-11 (S.D.N.Y. Apr. 7, 2017) (holding failure to plead release as affirmative defense waived release argument).

the terms of the agreement, the clarity of the agreement, and the amount of consideration. *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367-1368 (2d Cir. 1991) (internal citation omitted). Analyzing these factors requires additional fact-finding through discovery. *See id.* (noting these were factors the district court assessed in ruling on a motion for summary judgment).

### 3.    The Release Agreement Does Not Bar Plaintiff's Claims.

Should the Court consider the Release Agreement at this time, because JPMC has not met its burden of proving that the Release bars Plaintiff's claims, whether the Court applies Rule 12(b)(1) or Rule 12(b)(6) to JPMC's motion.

### a.    The Release Was Not Knowing and Voluntary.

Substantively, JPMC's motion should be denied because JPMC fails to meet its burden to show the Release was knowing and voluntary. "The validity of a waiver of pension benefits under ERISA is subject to closer scrutiny than a waiver of general contract claims." *Sharkey*, 70 F.3d at 231. "The reason courts have taken this more protective approach in the ERISA context is because individuals waiving pension benefits claims are relinquishing rights that ERISA indicates a strong congressional purpose of preserving." *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 314 (D. Conn. 2008), *aff'd*, 348 Fed. Appx. 627 (2d Cir. 2009), *vacated and remanded on other grounds*, 563 U.S. 421 (2011).

As discussed above, JPMC bears the burden of proving that the waiver was knowing and voluntary using the non-exhaustive list of factors articulated by the Second Circuit in *Laniok*. And even where those factors favor defendant, which is not the case here, circumstances evincing fraudulent inducement or misrepresentation "would justify setting aside the release." *DePace v. Matsushita Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 556 (E.D.N.Y. 2003). In this regard, Plaintiff plausibly alleges JPMC misled him about his pension benefits for more than 15

years. *Pessin*, 112 F.4th at 140-44.[11] Thus, JPMC cannot meet its burden based on the complaint and the Release Agreement, neither of which addresses the *Laniok* factors.[12]

> ### b.    Mr. Pessin's Claims Are Carved Out of the Release Because They Arose *Well After* Execution of the Release Agreement.

Even if this Court looks at the release JPMC advances, Plaintiff's claims are not barred—for the time periods both before and after he executed the Release. Turning first to the period prior to executing the release, none of Mr. Pessin's claims arose before he executed the release because JPMC did not provide him with truthful information *until April, 2021*, well after the release was signed in March 2019. ¶¶ 63-66. *Cf. Sullivan v. Stanadyne Corp.*, 2015 WL 3674751, at *6 (D. Conn. June 12, 2015) (release barred claim where plaintiff knew when he signed release that issue of what compensation would be covered by plan was unresolved).

Turning next to the period after execution of the release, JPMC cannot carry its burden to show that Mr. Pessin's claims are barred by the release because the Release Agreement explicitly excludes post-execution claims. Dkt No. 59-1, pp. 2-3 ("I am not releasing . . . [¶] any rights or claims (i) that may arise after I sign below[.]"). Defendants tacitly admit as much by stating that their arguments based on the "release provision" and the "covenant not to sue" only apply to pre-execution claims. Dkt No. 58 at 9. Rather, Defendants continue their arguments based on the "no-class-action covenant," would (they argue) apply to post-execution claims.[13]

While the release here attempts to cover "claims I do not know about," nothing in it

---

[11] JPMC obtained the release *before* issuing Mr. Pessin the pension election packet on which it now relies. *Compare* Dkt No. 59-1 (release signed 3/8/19) *with* Dkt No. 59-3 (election letter dated 3/27/19).

[12] The cases cited by JPMC in support of not "knowing or voluntary" on page 12 are inapposite. *Stanley* and *Hill* are discussed *supra*. In none of JPMC's cases did plaintiff allege that, as here, defendant made misrepresentations for a significant period before signing the release. *Cf. Yablon v. Stroock & Stroock & Lavan Ret. Plan & Trust*, 2002 WL 1300256 (S.D.N.Y. June 11, 2002); *Smith v. JPMorgan Chase*, 2016 WL 5339548 (S.D.N.Y. Sept. 23, 2016); *Laramee v. Jewish Guild for the Blind*, 72 F. Supp. 2d 357 (S.D.N.Y. 1999).

[13] As discussed below, JPMC's arguments specific to the "no-sue-covenant" and the "no-class-action-covenant" go nowhere.

purports to release claims that JPMC has concealed. Dkt No. 59-1, p. 1.[14] Indeed, even after Mr. Pessin signed the Release Agreement, JPMC continued to misinform him just as it had done for the previous 15 years. Mr. Pessin received a pension benefit election packet dated March 27, 2019, that falsely stated that his pension benefit would "continue[] to grow with monthly pension credits" after his separation and did not mention wear-away. ¶¶ 58, 59. For the years 2019 and 2020, JPMC sent Plaintiff pension statements that falsely reassured him that during his employment, "your account grew with monthly pay credits" and that his benefit was continuing to grow with "interest credits." ¶¶ 60, 61; Dkt Nos. 34-4, 34-5. The Release Agreement does not bar claims based on this later misinformation.

### c. Mr. Pessin's Claims Are Carved Out of the Release Because They Are Claims for Vested Benefits or Benefits.

Mr. Pessin's claims are also carved out of the Release Agreement because they are claims for vested benefits under the JPMC Plan. The release states, "I am not releasing . . . [¶] any rights or claims . . . under the terms of any pension plan . . . for payment of any vested benefits." Dkt No. 59-1, pp. 2-3. Mr. Pessin seeks reformation of the JPMC Plan to provide benefits consistent with JPMC's representations. ¶¶ 105, 111, 116, 124. If he obtains this relief, he will have a right to payment of additional vested benefits under the terms of the Plan as reformed; therefore, his claims are excluded from the release.

Similarly, in *Bilello v. JPMorgan Chase Retirement Plan*, 592 F. Supp. 2d 654 (S.D.N.Y. 2009), a participant in the JPMC Plan alleged inadequate notice of a reduction in the rate of

---

[14] In contrast, JPMC relies on a case in which the release explicitly included claims that were "concealed or hidden." *Russell v. Harman Intern. Indus., Inc.*, 945 F. Supp. 2d 68, 78 (D.D.C. 2013), *aff'd on other grounds*, 773 F.3d 253 (D.C. Cir. 2014). Indeed, none of the cases cited by JPMC stand for the proposition that release would cover claims--like here—that were concealed or hidden, and where--like here--"concealed or hidden" language was not included in the release agreement. *See Simel v. JP Morgan Chase*, 2007 WL 809689 (S.D.N.Y. Mar. 19, 2007); *Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68 (D.D.C. 2013); *Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399 (2d Cir. 1989); *Finz v. Schlesinger*, 957 F.2d 78 (2d Cir. 1992).

future benefit accrual upon conversion to a cash balance plan. *Id.* at 657-58. On a motion to dismiss, this Court held that the plaintiff had standing as a participant in the JPMC Plan, despite having received a distribution of his benefit, because if he prevailed on his notice claim he might be eligible for additional benefits under the pre-conversion formula. *Id.* at 666. Likewise, Mr. Pessin's claims, if successful, may make him eligible for additional vested benefits. Accordingly, they also come within the release's exclusion for benefits claims in general. *See also Amara*, 534 F. Supp. 2d at 314, 316 (finding a release excluding "any claims for benefits under any retirement, savings, or other employee benefit programs" did not bar plaintiffs' claims based on defendants' misrepresentations regarding wear-away); *Masten v. Metro. Life Ins. Co.*, 2024 WL 4350909, *11 (S.D.N.Y. Sept. 20, 2024) (finding a release excluding "any rights or benefits that vested…under any employee benefit plans governed by ERISA" did not bar plaintiffs' claims).

JPMC argues that its release should be read to limit this exception to claims brought pursuant to ERISA § 502(a)(1)(B). Dkt No. 58 at 10 n.3. JPMC's attempted rewrite comes too late. JPMC could have specified in the release it alone drafted that the exception for benefits was limited to only those claims arising under a specific sub-sub-paragraph of ERISA's civil enforcement provision. But nothing in the release told Mr. Pessin that he would have no recourse if he subsequently learned that JPMC's pension statements failed to show his actual pension.[15]

### d.    Plaintiff's Claims Are Not Covered by the Release Because They Are Not Employment-Related.

The Release Agreement specifically relates to "employment with the Company and/or the termination of my employment." 59-1 at 1. This language does not encompass Mr. Pessin's

---

[15] JPMC's citations to out-of-circuit authority do not assist its argument because none of them involves a plan administrator misleading participants about benefits; rather, they all involve challenges to plan fiduciaries' investment decisions. *See Howell v. Motorolla*, 633 F.3d 552, 560 (7th Cir. 2011) (exception for "claims for benefits" under defined contribution plan did not extend to recovery of investment losses); *Stanley*, 394 F. Supp. 3d at 108 (same); *In re SunTrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) (same).

ERISA claims. The Second Circuit recently considered whether an ERISA fiduciary breach claim under § 502(a)(2) "related to" a defined contribution plan participant's employment in the context of an arbitration agreement. *Cooper v. Ruane Cunniff & Goldfarb*, 990 F.3d 173 (2d Cir. 2021). The court refused to apply an arbitration clause with similar "employment" language, holding "a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." *Id.* at 184.

The arbitration agreement in *Cooper* contained similar language to the Release Agreement here and purported to mandate arbitration of "all legal claims arising out of or relating to employment, application of employment, or termination of employment." *Id.* at 178. In holding that fiduciary breach claims under ERISA § 502(a)(2) were not subject to the arbitration agreement, the Court held that "a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment." *Id.* at 184. The *Cooper* court found it significant that the plaintiff's claims "hinge entirely on the investment decisions made by [the defendant]; the substance of his claims has no connection to his own work performance, his evaluations, his treatment by supervisors, the amount of his compensation, the condition of his workplace, or any other fact particular to [the plaintiff's] individual experience at [his employer]." *Id.* at 183. Plaintiff's claims here also lack any connection with his JPMC employment experience, and instead, arise solely out of JPMC's management of the JPMC Plan. As in *Cooper*, the fact that the JPMC Plan's benefits were part of Plaintiff's compensation does not mean that the claim here "relat[es] to employment" for purposes of the Release Agreement. Therefore, the Release Agreement has no effect on Mr. Pessin's claims. *See Allison v. L Brands, Inc.*, 2021 WL 4224729 (S.D. Ohio Sept. 16, 2021) (applying *Cooper* holding to release).

**4.      Defendants' Remaining Arguments Relating to the Covenants "Not to Sue" and "No-Class-Action" Go Nowhere.**

The purported Covenants "not to sue" and "no-class-action" do not prevent Mr. Pessin from stating a claim on which relief can be granted under Rule 12(b)(6), nor do they prevent standing under Rule 12(b)(1).[16] *Cf.* Dkt No. 58 at 13-15.

As an initial matter, the two purported covenants are void because they are unlawful exculpatory provisions barred by ERISA § 410(a), which states "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *See, e.g., Rosenbaum v. Davis Iron Works*, 871 F.2d 1088 (6th Cir. Apr. 19, 1989) (unpublished) (finding § 410(a) prohibited enforcement of employee's release of breach of fiduciary duty claims against plan fiduciary). By virtue of its positionas  Plan Administrator, JPMC is an ERISA fiduciary, and the fiduciary duty to monitor applies to the JPMC Board. 29 C.F.R. § 2509.75-8, D-3; *Pessin*, 112 F.4th at 144.

Additionally, the release bars Mr. Pessin from suing on or "in connection with" released claims. Dkt No. 59-1, p. 3. JPMC has not carried its burden to show Mr. Pessin's claims are released, so the release cannot bar Mr. Pessin from suing or participating in a class action.[17]

Defendants claim that the "no-class-action covenant" is not limited to the "defined 'claims' he released in the release provisions." Dkt No. 58 at 14. Defendants' position falters on the maxim *ejusdem generis*, the canon that "[w]hen a general word or phrase follows a list of

---

[16] JPMC also relies on an RSU agreement in support of its "no-class-action" argument. But JPMC does not make any unique arguments based on the RSU agreement. Thus, JPMC's allegations based on the RSU agreement fail for the same reasons stated herein.

[17] Defendants cite two cases for a proposition that "a covenant not to sue is 'distinct from a release.'" Dkt No. 58 at 13. Plaintiffs do not necessarily disagree. Yet, the "covenant not to sue" is subject to the released claims and its carveouts. 59-1 at 3. Indeed, Defendants tacitly admit as much by arguing that only the "no-class-action-covenant" is not subject to the released claims and carveouts.  Dkt No. 58 at 14.

specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." Black's Law Dictionary (12th ed. 2024). Defendants' position also falters under the related canon *noscitur a sociis*, which teaches that a word is "given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). These canons "track the common sense intuition" that the drafter "would not ordinarily introduce a general term that renders meaningless the specific text that accompanies it." *Fischer v. United States*, 144 S. Ct. 2176, 2183-84 (2024). Here, JPMC's position on the "no-class-action covenant" would "render meaningless the specific text that accompanies it." *See id.*

For these reasons, JPMC's standing argument should be rejected.

**D.    Plaintiff's Claims Are Not Time-Barred.**

Finally, JPMC argues Plaintiff's claim for relief under § 502(c), 29 U.S.C. § 1132(c), based on JPMC's violations of § 105(a) is time-barred. JPMC contends the one-year statute of limitations contained in N.Y. C.P.L.R. § 215(4) applies to Mr. Pessin's claim. Under this one-year window, JPMC contends Mr. Pessin has no timely claims because the benefit election packet JPMC provided him in 2019 satisfied § 105(a).[18] JPMC is wrong for two reasons. First, a three-year statute of limitations applies. Second, the contradictory pension election packet did not inform Mr. Pessin that JPMC's pension benefit statements were inaccurate, and the Second Circuit held that § 105(a) cannot be satisfied by extraneous communications. Accordingly, Mr. Pessin's claims are timely under the discovery rule regardless of the statute this court applies.

**1.    Plaintiff's § 502(c) Claim Is Timely Under New York's Three-Year Statute of Limitations To the Extent It Seeks a Penalty**

ERISA does not contain a statute of limitations for claims under ERISA § 502, other than

---

[18] As a makeweight, JPMC also points to an election packet that it sent Mr. Pessin in April 2021, but this communication is obviously irrelevant, because Mr. Pessin filed suit in March 2022.

for claims for breach of fiduciary duty. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009); *see* ERISA § 413, 29 U.S.C. § 1113. Instead, a court must apply the limitations period "specified in the most nearly analogous state limitations statute." *Burke*, 572 F.3d at 78. In ERISA cases, courts look to the law of the forum state, unless the subject plan contains a choice-of-law provision. *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1129 (9th Cir. 1993); *Ellis v. Liberty Life Assurance Company of Boston*, 958 F.3d 1271, 1288-89 (10th Cir. 2020). Here, the forum and the Plan's choice of law are the same: New York. *See* Renaker Decl., Exh. A, Art. XV, § 15.1 (Plan choice-of-law provision). Thus, the applicable New York statute of limitations applies. However, JPMC relies on the wrong New York statute.

In *Brown*, 858 F.3d at 130, the Second Circuit held the most analogous statute for implying a limitations period for ERISA § 502(c) is the period applicable to statutory penalties. Following that guidance, this District has held the most analogous New York statute for statutory penalties is N.Y. C.P.L.R. 214(2), which allows three years to commence "an action to recover upon a liability, penalty, or forfeiture created or imposed by statute, with some irrelevant exceptions." *Kowalchyn v. Lewis*, 2018 WL 2081858 (S.D.N.Y. March 28, 2018).

Against this backdrop, the cases JPMC relies on are inapposite. To start, *Williamson*, *Tracey*, and *Levin*[19] fail to address the relevant statute of limitations under New York state law for an ERISA claim seeking relief under § 502(c). The only case JPMC cites that engages in such an analysis looks only to the Connecticut statute of limitations—not New York law. *See Brown*, 886 F.3d at 127. JPMC's primary argument under *Brown* is that § 502(c) is a penalty for purposes of N.Y. C.P.L.R. § 215(4), which imposes a one-year limit for "an action to enforce a penalty or forfeiture created by statute and given wholly or partly to any person who will

---

[19] *Williamson*, 953 F.2d 1278; *Tracey*, 772 F. Supp. 726; *Levin*, 2013 WL 1296312.

prosecute." While *Brown* does describe § 502(c) as "punitive…for the purpose of ascertaining its statute of limitations," this has no bearing on whether § 502(c) is a penalty under New York State law, which is distinct analysis that JPMC fails to engage in.

Under N.Y. C.P.L.R. 215(4), penalties apply only to address *public* wrongs, not private injuries. *East Midtown Plaza Hous. Co. v. Gamble*, 60 Misc. 3d 9, 11, 78 N.Y.S.3d 621, 623 (N.Y. App. Term 2018). This is why New York courts recognize that § 215(4) is applied in "citizen-taxpayer actions to enforce public rights." *Id.*; *see New York State Ass'n of Plumbing–Heating–Cooling Contrs. v. Egan*, 65 N.Y.2d 793, 493 N.Y.S.2d 112, 482 N.E.2d 908 (1985) (citizen taxpayer action under the State Finance Law for the return of illegally expended state funds); *Clowes v. Pulver*, 258 A.D.2d 50, 691 N.Y.S.2d 649 (1999) (citizen-taxpayer action under General Municipal Law to recover funds improperly paid for work performed on behalf of the County). Further, under New York law, a penalty is a monetary award "without reference or regard to the actual damage sustained" that "is not designed to compensate anyone." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 552, 563, 183 N.E.3d 443, 449 (2021).

Here, ERISA § 502(c) is "substantially more private than public." *Stone v. Travelers Corp.*, 58 F.3d 434, 438 (9th Cir. 1995) (holding § 502(c) claim was not a penalty under California law since it was for a private, not public injury); *see also Abbot v. Drs. Ridgik, Steinberg & Assocs., P.A.*, 609 F. Supp. 1216, 1219 (D.N.J. 1985) (explaining under § 502(c), the "per diem award does not merely punish; it also compensates for the injury caused by an administrator's delay"). Indeed, ERISA § 502(c)(1)(A) states that a plan administrator is "personally liable to such participant or beneficiary in the amount of up to $100 a day" when it fails to comply with § 105(a), 29 U.S.C. § 1025(a). This shows § 502(c) contemplates private relief since the administrator is "personally liable" to a plan participant.

JPMC also ignores that the third claim for relief seeks not just penalties pursuant to §

502(c), but also equitable relief authorized by both § 502(c) and § 502(a)(3), including

reformation. ¶¶ 90, 116-17; 29 U.S.C. § 1132(a)(3), (c); *see Cigna Corp. v. Amara*, 563 U.S.

421, 440 (2011) (reformation is appropriate equitable relief for misrepresentations about wear-

away). Equitable relief is, by definition, not punitive: "equity never 'lends its aid to enforce a

forfeiture or penalty.'" *Liu v. Securities & Exchange Comm'n*, 591 U.S. 71, 77 (2020); *see*

*Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (§ 502(a)(3) does not authorize award of

punitive damages). New York's catch-all six-year statute of limitations applies to claims for

equitable relief. N.Y. C.P.L.R. 213(1); *Kaufman v. Cohen*, 307 A.D.2d 113, 118, 760 N.Y.S. 2d

157 (2003). Therefore, Mr. Pessin's third claim for relief is timely.

Accordingly, N.Y. C.L.P.R. 215(4) is inapt and the Court should instead look to N.Y.

C.P.L.R. 214(2) as to the penalty, as dictated by *Kowalchyn*, 2018 WL 2081858, and to N.Y.

C.P.L.R. 213(1) as to equitable relief.

## 2.    Application of Pennsylvania Law Would Not Assist JPMC's Argument.

JPMC argues that in addition to applying the most analogous New York statute of

limitations, the Court must also import New York's choice-of-law rule that selects the shorter of

the New York statute of limitations or the applicable statute of the plaintiff's state of residence.

There is no authority for this proposition, nor would its application assist JPMC, because

Pennsylvania, the state of Mr. Pessin's residence, provides for a six-year statute of limitations.

JPMC claims 42 P. Cons. Stat. § 5524(5) applies to Mr. Pessin's Count III claim (citing

*Valentino v. Cont'l Cas. Co.*, 2000 WL 33341979, at *2 (W.D. Pa. June 29, 2000)). As was the

case with New York, JPMC misses the mark on the proper Pennsylvania statute.

JPMC cites solely to *Valentino*, again claiming that § 502(c) is penal. But JPMC fails to

articulate the proper standard for what constitutes a civil penalty under 42 P. Cons. Stat. §

5524(5). Pennsylvania courts recognize that "civil penalties are *sanctions imposed by a government agency* for violation of a statute, regulation or permit." *E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist.*, 111 A.3d 220, 232 (Pa. Commw. Ct. 2015). On this basis, a statutory penalty "is not always subject to the two-year statute of limitations in 42 Pa. C.S. §5524(5)." *Id.* Here, Mr. Pessin seeks relief for himself, not sanctions imposed by a government agency. This is reflected in ERISA's scheme, which notes that a plan administrator who fails to comply with § 105 may "be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure." 29 U.S.C. § 1132(c)(1).

The remaining question is what statute would apply under Pennsylvania law. Under 42 P. Cons. Stat. § 5527(b), "any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years." Just like New York's catch-all statute, Pennsylvania's catch-all statute of limitations under § 5527(b) is the most analogous. Indeed, the Third Circuit has held that where an ERISA claim has no "counterpart in Pennsylvania law," the applicable statute of limitations is Pennsylvania's general six-year period under 42 Pa. Cons. Stat. §5527(b). *Romero v. Allstate Corp.*, 404 F.3d 212, 220 (3d Cir. 2005) (citing *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1180 (3d Cir. 1992)). As discussed above, § 5524(5) is inapposite since Mr. Pessin is not representing a government agency enforcing a penalty. And there appears to be no other relevant Pennsylvania statute of limitations. Accordingly, the § 5527(b) catch-all provision applies to Mr. Pessin's claim.

Thus, even if Mr. Pessin's claim accrued when he received a pension election packet dated March 27, 2019, as JPMC contends (but see below), Mr. Pessin's claim is timely under both New York and Pennsylvania law because he filed suit on March 25, 2022.

23

**3.    Plaintiff's Claim Is Timely Even If a One-Year Limitation Applies Because the Discovery Rule Tolled Plaintiff's Claim Until at Least April 2021.**

Alternatively, the discovery rule ensures that Mr. Pessin's claim is timely even under the shortest possible statute of limitations. Mr. Pessin did not know that JPMC's benefit statements were false until he requested and received additional information after receiving his pension election packaged dated April 21, 2021. Dkt No. 30 at ¶¶ 63–66. Indeed, as the Second Circuit explained, Mr. Pessin plausibly alleged JPMC provided him with an inaccurate benefit statement every year through 2020. *Pessin*, 112 F.4th at 144. Accordingly, the federal discovery rule applies. Because Plaintiff filed suit in March of 2022, his claim is timely.

In a federal question case—including and ERISA—courts look to federal common law to determine when a plaintiff's claim accrues. *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Under federal common law, courts apply the "discovery rule" to determine when an ERISA claim accrues. *Bilello*, 607 F. Supp. 2d at 592. Under this rule, a claim accrues when the plaintiff "discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Id.* Thus, Mr. Pessin's § 105(a) claim did not accrue until he discovered or should have discovered that his benefit statements did not show his total benefits accrued.

Here, none of the statements Mr. Pessin received before 2021 disclosed his frozen final average pay benefit amount, which was his actual accrued benefit. Dkt. No. 30 at ¶ 53. It wasn't until 2021 that, in response to Mr. Pessin's request for a new pension election packet and follow-up questions, JPMC sent him calculation worksheets showing he had not accrued any additional pension benefit since December 31, 2003. *Id.* at ¶¶ 63-65. Thus, Mr. Pessin was not aware of wear-away and his actual accrued benefit until after he received the 2021 pension election package. *See* Dkt No. 59-5. Even under JPMC's asserted statute of limitations, Mr. Pessin's claim is timely because he filed on March 25, 2022—less than one year after April 21, 2021.

24

JPMC argues that Mr. Pessin's only potential claims arise from pension statements he received in March 2016 or earlier because the 2019 benefit packet satisfied § 105(a) for the entire period April 2016 to March 2019, and the 2021 benefit election packet satisfied § 105 thereafter. But as explained above in Section A, the 2019 pension election packet did nothing to alert Mr. Pessin that the previous 15 years' benefit statements were false. JPMC did not cure the deficiency in its benefit statements in 2019.

At bottom, Mr. Pessin was not aware of the deficiency in JPMC's benefit statements until April 2021. Because he brought his claim in March 2022, his claim is timely even under the most conservative statute of limitations window addressed in the parties' briefs. Therefore, the Court must deny JPMC's motion to dismiss on that ground.[20]

### IV.    CONCLUSION

For all these reasons, JPMC's motion to dismiss should be denied.

KELLER ROHRBACK L.L.P.

By: *s/ Jeffrey Lewis*_____
Jeffrey Lewis
jlewis@kellerrohrback.com
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Tel.: (510) 463-3900
Fax: (510) 463-3901

Erin Riley, pro hac vice
Chris Ryder, pro hac vice
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Tel.: (206) 623-1900
Fax: (206) 623-3384
eriley@kellerrohrback.com
cryder@kellerrohrback.com

---

[20] As Defendant correctly notes, Plaintiff's Count II claim for breach of fiduciary duty requires an antecedent breach of Section 105(a) to be viable. Thus, Plaintiff agrees that Counts II and III rise and fall together under the Court's analysis for whether Plaintiff's Count III claim is timely.

Teresa S. Renaker
RENAKER SCOTT LLP
505 Montgomery Street, Suite 1125
San Francisco, CA 94111
Tel.: (415) 653-1733
Fax: (415) 727-5079
teresa@renakerscott.com

***Attorneys for Plaintiffs***