```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
JOSEPH PESSIN, on behalf of himself      :
and all others similarly situated,       :
                                         :           22cv2436 (DLC)
                     Plaintiff,          :
                                         :           OPINION AND
             -v-                         :              ORDER
                                         :
JPMORGAN CHASE U.S. BENEFITS             :
EXECUTIVE, et al.,                       :
                     Defendants.         :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff Joseph Pessin:
Jeffrey Lewis
Keller Rohrback LLP
180 Grand Avenue, Suite 1380
Oakland, CA 94612

Erin M. Riley
Chris N. Ryder
Keller Rohrback LLP
1201 3rd Ave, Suite 3400
Seattle, WA 98101

Teresa S. Renaker
Renaker Scott LLP
505 Montgomery Street, Suite # 1125
San Francisco, CA 94111

David S. Preminger
Keller Rohrback LLP
1140 Avenue of the Americas
New York, NY 10036

For defendants JPMorgan U.S. Benefits Executive, et al.:
Jeremy P. Blumenfeld
Alexis Caris
Mary Ann Ferguson McNulty
Morgan, Lewis & Bockius LLP
2222 Market Street

Philadelphia, PA 19103

Sari Alamuddin
Eric Mackie
Morgan, Lewis & Bockius LLP
110 N. Wacker Dr., Suite 2800
Chicago, IL 60606

Stephanie Reiss
Morgan, Lewis & Bockius LLP
One Oxford Centre, Thirty-Second Floor
Pittsburgh, PA 15219

DENISE COTE, District Judge:

    Joseph Pessin, a former employee of JPMorgan Chase & Company ("JPMC"), brought this action against the administrator of his pension plan, the JPMC Benefits Executive, for failing to make certain disclosures as required by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Pessin also alleged that JPMC's Board of Directors ("JPMC Board") violated ERISA by failing to monitor the JPMC Benefits Executive. An Opinion of December 9, 2022 granted a motion to dismiss all of Pessin's claims ("2022 Opinion"). The Court of Appeals for the Second Circuit reversed the 2022 Opinion in part, remanding two claims for consideration of additional arguments raised by the defendants for dismissal of these claims. Pessin v. JPMorgan Chase U.S. Benefits Exec., 112 F.4th 129, 132 (2d Cir. 2024) ("2024 Opinion"). On remand, the defendants have moved to dismiss Pessin's remaining claims on those additional grounds. For the following reasons, the motion

is granted and the claims are dismissed as barred by the release the plaintiff executed in exchange for receipt of his severance package.

## Background

This Opinion assumes familiarity with the prior Opinions in this case and summarizes only the facts necessary to decide this motion. Facts are taken from the first amended complaint ("FAC"), documents integral to the FAC, and, for reasons discussed below, documents submitted by the defendants in support of their motion.

A. Pessin's Pension Plans

Pessin worked for J.P. Morgan & Co. ("Morgan") and JPMC from 1987 to March 24, 2019. For the first decade of his employment, Pessin was enrolled in Morgan's defined benefit pension plan ("Morgan Plan"). The Morgan Plan provided retirement benefits in amounts based on a formula that factored in the participant's compensation and length of employment ("final average pay formula"). At the end of 1998, the Morgan Plan was amended to use a different benefit formula ("Cash Balance Plan"). Using the Cash Balance Plan formula, participants were presented with an "account balance," which increased over time by accumulating "pay credits" corresponding

to the participant's compensation, along with "interest credits."

When the Morgan Plan transitioned to the Cash Balance Plan, participants were assigned "opening account balances" based on the annuity benefit they would have received under the Morgan Plan.[1]  Until December 30, 2003, former Morgan Plan participants' benefits were calculated using both the final average pay formula and the Cash Balance Plan formula.  From that point, benefits accrued only under the Cash Balance Plan.

After 2003, former Morgan Plan participants who left employment would receive the greater of (a) their benefits under the final average pay formula as of December 30, 2003, or (b) their benefits under the Cash Balance Plan formula.  As a result, the final average pay formula calculation, frozen at the end of 2003, would serve as a participant's benefit amount until their balance under the Cash Balance Plan exceeded it, if that ever happened.  This arrangement is called "wear away," because the older plan's frozen benefit amount acts as a minimum benefit amount until it "wears away" such that the amount calculated

---

[1] Because of Morgan's becoming JPMC through its December 31, 2000 merger with Chase Manhattan Bank, the Cash Balance Plan became the JPMorgan Chase Retirement Plan ("JPMC Plan").  All of its terms relevant here were the same as those of Morgan's Cash Balance Plan.

under the new formula (here, the Cash Balance Plan formula) accumulates enough to surpass it.

B.   Plan Disclosures

During Pessin's employment, the JPMC Benefits Executive and its predecessor made several disclosures to plan participants regarding the plans and their wear-away mechanism.  First, Summary Plan Descriptions ("SPDs") were sent to participants on January 1, 1999, when the Cash Balance Plan became effective, in September 2000, and in the fall of 2005.  Each of these SPDs detailed the transition arrangement described above.  They explained that, after 2003, former Morgan Plan participants would receive the greater of the December 2003 final average pay formula calculation or the benefit calculated under the Cash Balance Plan formula.

In 2002, the JPMC Benefits Executive began sending participants annual pension benefit statements ("Benefit Statements").  The Benefit Statements disclosed the amount a participant had accumulated under the Cash Balance Plan formula. Just below that amount, the Benefit Statements noted that the amount "does not reflect any minimum benefit that you might have accrued under a prior plan formula," and directed participants who wanted more information about minimum benefits to call "HR

Answers."  Contact information for "HR Answers" was provided on the next page of the document.

C.   Release Agreement

Pessin left his employment at JPMC on March 24, 2019.  Two weeks before leaving, on March 8, Pessin signed a document titled "Release Agreement," stating on its first page that he released JPMC and its affiliates (including "any fiduciaries of any employee benefit plan") from certain claims "in exchange for the severance pay, severance-related benefits and career services" the company had offered him ("Release Agreement").[2]  That five-page document indicated that Pessin released "any claims or potential claims relating to my employment with the Company and/or the termination of my employment."  It continued, "I understand that 'claims' includes claims I know about and claims I do not know about."  Still on its first page, the Release Agreement provided a non-exhaustive list of released claims, including those brought under the "Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited

---

[2] In 2012, Pessin also signed a document titled "JPMORGAN CHASE & CO. LONG-TERM INCENTIVE PLAN, TERMS AND CONDITIONS OF JANUARY 18, 2012, RESTRICTED STOCK AWARD UNIT" ("RSU Agreement"). According to the RSU Agreement, in exchange for the award of JPMC stock, Pessin agreed to waive his right to a jury trial and to not "submit, initiate, or participate" in a class action "with respect to any claim brought in connection with your employment" at JPMC.

to, breach of fiduciary duty and equitable claims arising under 1132(a)(3) of ERISA." On its first and second pages, the Release Agreement listed several exceptions to the release, including "any rights or claims . . . that may arise after I sign below [or] under the terms of any pension plan or deferred compensation plan for payment of any vested benefits."

On the second page, in a section titled "Agreement Not to Sue," the signer promised they would not sue in connection with the released claims or act as a class representative in a class action against JPMC. On its last page, the Release Agreement stated that its signer had until March 24, 2019 to assent to it. The Release Agreement continued:

> By signing below, I confirm that I have read this Release, understand it, agree to it and sign it knowingly and voluntarily. I agree that I am signing the Release in exchange for benefits to which I would not otherwise be entitled. I am hereby advised to discuss this Release with an attorney of my choosing (at my own expense) prior to the execution of this Release. I agree that I have been given a reasonable period of time (at least forty-five (45) calendar days) to review, consider and sign this Release. . . . I understand that I may change my mind and revoke this Release within seven (7) days of signing it by executing my revocation within that seven day period.

Pessin does not dispute that he signed the Release Agreement.

II. Pessin's Lawsuit

Three days after leaving JPMC, Pessin received a pension benefit election packet. After requesting and receiving a

7

second packet in 2021, Pessin contacted JPMC for more information about his benefit calculation. The worksheets he received in response showed that his benefit amount under the Cash Balance Plan formula was lower than the final average pay formula amount frozen in December 2003. As a result, his benefit would be the amount calculated under the final average pay formula, which had not increased since 2003.

Pessin filed this action on March 25, 2022, bringing four claims for violations of ERISA. Following the filing of a motion to dismiss, Pessin filed the FAC on July 27. In the FAC, Pessin first alleged that the JPMC Benefits Executive violated ERISA § 404(a), 29 U.S.C. § 1104(a), by breaching its fiduciary duty in failing disclose that his benefit amount was effectively frozen and concealing the fact that it was not increasing during his continued employment. Second, he alleged that the JPMC Board violated § 404(a) by breaching its fiduciary duty to monitor the Executive. Third, he alleged that the Executive violated ERISA § 105(a), 29 U.S.C. § 1025(a), by providing Benefit Statements that did not indicate his total benefits accrued, as that section requires. Finally, Pessin claimed that the Executive violated ERISA § 102, 29 U.S.C. § 1022, by failing to provide SPDs that complied with requirements of that section and its implementing regulation. The 2022 Opinion granted a

renewed motion to dismiss Pessin's claims. <u>Pessin v. JPMorgan U.S. Benefits Exec.</u>, No. 22cv2436, 2022 WL 17551993, at *1 (S.D.N.Y. Dec. 9, 2022).

On August 13, 2024, the Court of Appeals for the Second Circuit reversed the 2022 Opinion in part, remanding the case for further proceedings. <u>Pessin</u>, 112 F.4th at 132. The Second Circuit affirmed the dismissal of Pessin's §§ 404(a) and 102 claims against the JPMC Benefits Executive. <u>Id.</u> at 136-40. It reversed the dismissal of Pessin's § 105 claim, reasoning that the Benefit Statements failed to indicate Pessin's "total benefits accrued," as required by the statute. <u>Id.</u> at 140-43. The Second Circuit also reversed the dismissal of the § 404(a) claim against the JPMC Board, as it was partially derived from the § 105 claim against the Executive. <u>Id.</u> at 143. The Court of Appeals withheld decision on two other arguments that the defendants made because they were not considered in the 2022 Opinion: first, that Pessin's claims were untimely, and second, that he released them in his Release Agreement with JPMC. <u>Id.</u> at 143-44.

The Second Circuit's mandate issued on September 3. Pursuant to a scheduling order, the defendants filed their renewed motion to dismiss the FAC on October 4. The motion was fully submitted on November 1.

## Discussion

The defendants argue that Pessin's claims fail because he agreed not to bring them in his Release Agreement.[3] Pessin responds that the Release Agreement is not properly before the Court, and that, even if it were, the release does not bar his claims. The defendants' motion to enforce the release is converted to a motion for summary judgment. Because Pessin released his claims in this action, summary judgment is granted in favor of the defendants.

I. Conversion to Summary Judgment

The defendants' motion to enforce the release relies on the release itself, which is not integral to the FAC. Accordingly, the defendants seek to convert their motion to one for summary judgment.[4] That application is granted.

---

[3] Because Pessin released his claims, this Opinion does not address the defendants' other arguments for dismissing them. Those other arguments are, first, that the defendants disclosed the information required by § 105 in the benefit election packets that Pessin received in 2019 and 2021 and, second, that Pessin's claims are time-barred.

[4] As an initial matter, the defendants argue that Pessin lacks standing to bring this lawsuit because he released his claims. They reason that he has "no legally cognizable interest in the outcome of the litigation," and thus his alleged injury cannot be addressed by a favorable judicial decision. A claim's legal insufficiency does not mean a plaintiff lacks standing to bring it. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998) ("[T]he nonexistence of a cause of action [is] no proper basis for a jurisdictional dismissal."); Dylan 140 LLC v. Figueroa, 982 F.3d 851, 855 (2d Cir. 2020) (citing Bell v. Hood,

The defendants' motion included a copy of the release and notice of their intent to seek conversion of the motion to one for summary judgment. Rule 12(d), Fed. R. Civ. P., states: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." "The choice to convert a motion generally turns on whether doing so is likely to facilitate the disposition of the action on the merits." Lugo v. City of Troy, 114 F.4th 80, 88 (2d Cir. 2024) (citation omitted). Here, converting the motion to one for summary judgment facilitates this case's disposition. Accordingly, the defendants' motion to dismiss is converted to a Rule 56 motion.

Pessin argues that summary judgment is improper before he has the chance to take discovery regarding whether his release was knowing and voluntary. That argument fails. A party resisting pre-discovery summary judgment must show "what facts are sought," "how those facts are reasonably expected to create a genuine issue of material fact," and what efforts they have made to obtain them. Elliott v. Cartagena, 84 F.4th 481, 493

---

327 U.S. 678, 682 (1946)). Thus, Pessin's release of his claims does not undermine his Article III standing.

(2d Cir. 2023) (citation omitted). Pessin has not done so. See Fed. R. Civ. P. 56(d).

Pessin does not dispute that he executed the release. Nor has he submitted an affidavit to raise a question of fact as to whether he released his rights knowingly and voluntarily. Rather, his counsel's affidavit asserts that discovery of "JPMC's and its predecessor's communications with Plan participants" is necessary to show that the JPMC Benefits Executive misrepresented plan benefits. The Second Circuit has already found, however, that the primary JPMC Plan disclosures, which were integral to the claims made in the FAC, repeatedly notified participants of the very issue that Pessin suggests was hidden from him. Pessin, 112 F.4th at 137-40. Summary judgment cannot be defeated by speculation about the contents of decades of disclosures issued to plan participants. The "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." DeFabio v. E. Hampton Union Free Sch. Dist., 623 F.3d 71, 81 (2d Cir. 2010) (citation omitted). The party resisting summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Id. (citation omitted).

II.   The Release Agreement

The parties dispute both whether Pessin validly assented to the Release Agreement and whether his claims in this case fall with the Release Agreement's scope.  "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Tarpon Bay Partners LLC v. Zerez Holdings Corp., 79 F.4th 206, 220 (2d Cir. 2023) (quoting Fed. R. Civ. P. 56(a)).  "A material fact is one that would affect the outcome of the suit under the governing law."  Id. (citation omitted).  The record shows that Pessin released the claims in this lawsuit and thus his claims fail as a matter of law.

A.   Execution of the Release

An employee can waive their claims under ERISA, but only if they do so "knowingly and voluntarily."  Frommert v. Conkright, 535 F.3d 111, 121 (2d Cir. 2008) (citation omitted), rev'd on other grounds, 559 U.S. 506 (2010).  The Second Circuit has set forth a non-exhaustive list of factors "relevant to the determination of whether such a waiver is knowing and voluntary":

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of [the] plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an

> attorney, as well as whether an employer encouraged
> the employee to consult an attorney and whether the
> employee had a fair opportunity to do so and 6)
> whether the consideration given in exchange for the
> waiver exceeds employee benefits to which the employee
> was already entitled by contract or law.

Id. (citation omitted). Courts considering this question consider the "totality of the circumstances" of a purported waiver. Id. (citation omitted).

Pessin has not offered any evidence to raise a question of fact as to whether his waiver of rights was knowing and voluntary. The Release Agreement itself was clear, it was reasonably short and unsurprising, and it straightforwardly noted the inclusion of ERISA claims in the upper half of its very first page. Pessin was given several weeks to consider the agreement, and an additional week after signing it to revoke his assent if he had second thoughts. He was advised to consult with an attorney regarding the Release Agreement. And he acknowledged receiving severance benefits in exchange for releasing his claims against parties including the defendants.

Pessin makes one argument for why he says he did not "knowingly and voluntarily" assent to the Release Agreement, which is that the defendants misled him about the "wear away" effects of the transition to the Cash Balance Plan until after he signed it. This argument runs headlong into the 2024 Opinion, which explained that the SPDs that Pessin received over

14

the years "adequately disclosed wear-away to plan participants and did not contain misleading information about the effect of wear-away on Pessin's benefits." 112 F.4th at 140. That the Court of Appeals held that the Benefit Statements failed to disclose Pessin's "total benefits accrued," as required by ERISA, does not mean they were misleading, much less that they fraudulently induced Pessin into signing the Release Agreement. On the contrary, the Benefit Statements explicitly stated that they did not reflect a participant's minimum benefit. As the Second Circuit noted, they along with the SPDs "explained in detail how plan participants could learn more information about their frozen final average pay benefit and advised that plan participants should call certain direct access 'help lines' for more information about their benefit comparisons." Id. at 139; see also id. at 140 ("There is no evidence that the Defendants withheld any information about his benefits"). Having failed to review these explanations or take the noticed opportunity to inquire, Pessin cannot now claim the defendants hid the truth about his minimum benefit before he signed the Release Agreement.

    B.    Scope of the Release

In the Release Agreement, Pessin agreed to release "any claims or potential claims relating to [his] employment,"

including claims he knew about at the time and those he did not. If there were any doubt, the Release Agreement further specified that it included claims arising under ERISA. The Release Agreement therefore bars the claims Pessin brings in this action.

Pessin argues that the scope of the release does not extend to his claims for essentially three reasons. First, Pessin posits that his claims are not covered because they arose after the execution of the 2019 Release Agreement. This argument, which repeats the notion that Pessin was not provided truthful information about his benefits until 2021, fails. Pessin's § 105 claim (the only one remaining other than the § 404 claim arising from it) arose before he executed the Release Agreement. The FAC alleges that the Benefit Statements he received, beginning in 2002, were missing the required "total benefit accrued" figure. Thus, his § 105 claim arose -- and he had plentiful notice of the facts underlying it -- long before he signed the 2019 Release Agreement.

Second, Pessin argues that his claims were excluded from the Release Agreement by its exception of "claims . . . under the terms of any pension plan . . . for payment of any vested benefits." This argument fares no better. Neither Pessin's § 105 claim nor the § 404 claim arising from it, both of which are

based on the inadequacy of the JPMC Benefits Executive's disclosures, are claims for "vested benefits" "under the terms of any pension plan." Fundamentally, Pessin's lawsuit is about disclosures that he says indicated he would receive more than the benefits due "under the terms" of the JPMC plan. That his claims are for relief other than what those terms actually provided is the point of this action. The exception on which he relies does not apply here.[5]

Finally, Pessin argues that his claims fall outside of the Release Agreement because they are not "related to my employment with the Company and/or the termination of my employment." Pessin is incorrect. He was a participant in the JPMC Plan in connection with, and as compensation for, his employment at JPMC. The benefits due under the plan were tied to Pessin's other compensation from his employer. According to the FAC itself, Pessin initially became a participant "as a Morgan employee."

Pessin's last argument rests entirely on Cooper v. Ruane Cunniff & Goldfarb Inc., 990 F.3d 173 (2d Cir. 2021). Like this

---

[5] Secondarily, Pessin's argument would seem to apply to virtually any claim brought under ERISA, rendering the Release Agreement's explicit inclusion of ERISA claims superfluous. See, e.g., Revitalizing Auto Cmtys. Env't Response Tr. v. National Grid USA, 92 F.4th 415, 441 (2d Cir. 2024) ("[W]e must avoid adopting [a contract] interpretation that would render any individual provision superfluous." (citation omitted)).

case, Cooper hinged on whether there was "an []adequate basis for finding that the parties intended the Agreement to reach" the plaintiff's claims. Id. at 175-76. But unlike those in Cooper, Pessin's claims are brought against his employer and an affiliate of his employer covered by the Release Agreement. They arise from disclosures he personally received pursuant to the pension plan provided by his employer as compensation for his employment. And while the agreement in Cooper explicitly excluded claims for "ERISA-related benefits provided under a Company sponsored benefit plan," id. at 181, Pessin's Release Agreement explicitly includes ERISA claims.[6]

## Conclusion

The defendants' October 4 motion to dismiss is converted to a motion for summary judgment and granted. The Clerk of Court shall enter judgment for the defendants.

Dated:   New York, New York
         January 8, 2025

_____
DENISE COTE
United States District Judge

---

[6] The parties separately dispute whether the Release Agreement's covenant "not to sue" and class action waiver are void pursuant to ERISA § 410(a), 29 U.S.C. § 1110(a). Because Pessin's claims fail because of the release itself, the validity of those specific covenants, which the parties agree are distinct from the release, is not material.